## Case No. 2,016.
### BROWN v. JACKSON.
[2 Wash. C. C. 24.][1]

Circuit Court, D. Pennsylvania. April Term, 1807.

PAYMENT — ACCEPTANCE OF BILL OF EXCHANGE — CUSTOM AND USAGE — WHEN MAY BE PROVEN — NEGOTIABLE INSTRUMENTS — INDORSEMENT — NOTICE OF NON-PAYMENT — ACTION ON — PARTIES.

1. If a bill of exchange be taken in payment, as a discharge of a pre-existent debt, or in such manner as imports an intention of the creditor to take the risk of the bill on himself, the original debt is thereby discharged.

[See Sheehy v. Mandeville, 6 Cranch (10 U. S.) 253; Bank of U. S. v. Daniel, 12 Pet. (37 U. S.) 32; In re Parker, 11 Fed. 397.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2. When the law upon a particular subject is settled, proof of a contrary usage cannot be admitted; such evidence being only allowed in doubtful cases.

[Cited in U. S. v. Buchanan, 8 How. (49 U. S.) 102.]

[See Walker v. Western Transp. Co., 3 Wall. (70 U. S.) 150; Barnard v. Kellogg, 10 Wall. (77 U. S.) 383; Thompson v. Riggs, 5 Wall. (72 U. S.) 663.]

3. If a bill of exchange is remitted, with a special endorsement, in payment of a previous debt which it was meant to discharge, the special endorsement does not restrain the rights of the endorsee on the drawer or on any previous endorser; whatever may be the effect of such endorsement between the creditor and his endorser. What will be due notice of non-payment of a bill of exchange.

[See U. S. v. Barker, Case No. 14,520.]

4. The holder of a bill of exchange protested for non-payment, is not obliged to sue any one of the parties of the bill, in order to strengthen his claim on other parties. He may sue or not, as he chooses.

At law. Indebitatus assumpsit [by Brown against John Jackson, for goods sold and delivered, in the first count, and on a bill of exchange, in the second count. Plaintiff recovered a verdict on the first count on a former trial (Case No. 2,015), but consented to a new trial, upon which he recovered the principal and interest of the bill].

This case, in which a new trial was awarded at the last term,—1 Wash. C. C. 512 [Case No. 2,015],—was now tried, and the only question was, as to the claims upon the bill of exchange, or for the original debt for which it was endorsed, and differed only from that case, as to the evidence that notice of non-acceptance was now proven.

The arguments of the defendant's counsel were; that the plaintiff acted and could only act as the agent of the defendant, and that it was his duty, immediately on the bill being protested, to deliver it to the defendant. That the attempt to get the principal and damages from the drawer in the first instance, passing by the endorser, discharged the endorser from his responsibility to pay the original debt; and that he never was liable to be sued, on this special endorsement, on the bill itself, because no interest whatever passed to him by the endorsement. That the damages, if they had been paid by the drawer, would, under the decisions in this state, have belonged to the defendant. They also contended, that the notice given to the defendant on the 11th was too late. They cited the following cases: [Watts v. Willing] 2 Dall. [2 U. S.] 100; [Chapman v. Steinmetz] 1 Dall. [1 U. S.] 261; [Keppele v. Carr] 4 Dall. [4 U. S.] 155; 1 Term R. 167. What is due notice is a matter of fact. 6 East, 14, 16. That it is not necessary for the defendant to prove special damages to have arisen from want of notice. The court informed the counsel that they need not read cases to prove that. It was said that if a bill be taken in payment of a pre-existing debt, such debt is discharged, though the bill is not paid.

WASHINGTON, Circuit Justice. If taken in payment as a discharge of a pre-existing debt, or in such a manner as imports an intention in the endorsee to take the risk of the bill upon himself, it is such a discharge.

The defendant offered witnesses to prove a custom, that in the trade between this country and England, the English merchant receiving a bill endorsed as this is, must return it immediately on protest to the endorser; that if he call on the drawer for payment, he exonerates the endorser. This being objected to, the counsel, in support of the evidence, cited [Keppele v. Carr] 4 Dall. [4 U. S.] 156; [Gorgerat v. M'Carty] 2 Dall. [2 U. S.] 148; 1 Ld. Raym. 743; 3 Burrows, 1675; Hardr. 486; [Ingraham v. Gibbs] 2 Dall. [2 U. S.] 135. On the other side were cited, 2 Burrows, 1227; 1 Ld. Raym. 442; 1 Salk. 128, 129.

BY THE COURT. The cause seems to turn upon the right of the plaintiff to recover as the holder of this bill; and the law upon this subject is settled. It would, therefore, be improper to let a contrary usage be proved, which is only proper in doubtful cases. The case might be different, if the plaintiff was to be considered as a mere agent. We shall, therefore, overrule the evidence; but as the question is stated to be of great and general consequence, and the establishment of the custom is deemed highly interesting to commercial men, the court will hear a motion for a new trial, should the verdict be for the plaintiff; when the question can receive a more sedate consideration.

The plaintiff's counsel, on the main question, contended that the plaintiff claimed, as holder of the bill, for a valuable consideration, and might sue the drawer or the endorser, or both; and that calling on the drawer did not discharge the endorser. That notice on the 11th, was sufficient.

WASHINGTON, Circuit Justice. It is admitted that the defendant was once indebted to the plaintiff, to the amount of the sum demanded; that he endorsed this bill with a view to discharge that debt; that neither the original debt nor this bill has been paid: and yet by some legal legerdemain we are told the plaintiff has lost his remedy, and that the defendant is discharged from the original debt, and from any claim on the bill. It is possible the unreasonableness of such a doctrine may mislead the court, and prevent them from appreciating the arguments urged in its support. The mistake of the defendant's counsel seems to arise from their considering the plaintiff as the mere agent or collector of the defendant. And clearly if this had been the case, their doctrine that the plaintiff cannot recover on the bill, would have been sound. An agent, acting under a naked authority, acquires no rights, and can do no acts, but such as are within the scope of his authority. It is certainly an act of

prudence, when a bill is remitted to an agent for collection, to restrain the negotiability of the bill, and to notify the world that the endorsee has paid no value for the bill, and that he acts as agent. A blank, or full endorsement, imports that the endorsee or holder took the bill, with all the negotiable qualities belonging to the nature of the instrument; and any person receiving such a bill, may recover the amount from the endorser, if the bill be dishonoured, contrary to his intentions. But if he limits the negotiability of the bill by endorsing it to the endorsee only, or to the use of the endorser, or uses any other expressions of like import; whoever takes the bill afterwards, takes it with every restriction and qualification which attended it; and as this agent had no interest in the bill, his endorsement can give none. But if, in fact, the endorser has an authority coupled with an interest; if the bill be endorsed for a valuable consideration, or paid on account of a pre-existing debt which the bill is intended to pay, the endorsee, taking it with the restricted endorsement, possesses all the rights of a general endorsee as between him and the endorser; however it might be as between him and the drawer, and either of the parties to the bill; as to which it is unnecessary to give any opinion.

Now in this case, the defendant, in the letter which enclosed this bill, acknowledges the receipt of certain goods to the amount of this bill, and states that the bill is remitted for the purpose of paying that account. The bill was, therefore, sent in payment of a pre-existing debt. The plaintiff was not bound to receive it as such, though he might do so if he pleased, for whether it was paid by the drawee, or by the drawer or endorser, was of no consequence to the endorser. If it proved unproductive, the endorser was liable upon the original demand, if the bill was returned; and if not returned, he was liable for no more upon the bill; for we are clearly of opinion, that the intention of the endorsement, and the true construction of it, imported that in case the bill was dishonoured, the endorser was to be discharged from the extra damages. Did the plaintiff take this bill in payment? His conduct proves that he did. Instead of returning it to the endorser, his agent demanded payment of principal, and damages from the drawer, and also from the defendant upon this last demand. What was the conduct of the defendant? He did not reclaim the bill, but offered to pay the principal and interest, which would have been agreed to by the plaintiff's agent, if the time proposed for payment had not been too long. Here then we have the language of the defendant, and the conduct of himself and of the plaintiff, to prove that this bill was given and received in discharge of the original debt. If so, the plaintiff is like any common holder of a bill, and was entitled to sue the drawer and endorser. It is admitted by the defendant's counsel, that

he acquired by the endorsement a legal right, and, as a trustee, might have sued on the bill. If so, let me ask where is the equitable title, if it is not in him who has paid the full value for the bill? And if both law and equity be united in the plaintiff, where is there a remaining doubt or question in the cause, if the plaintiff's right has not been defeated by his own negligence? It is plain that the plaintiff might have sued the drawer and might have recovered both the principal and damages; but whether the damages would be considered to the use of the endorser, the court will not determine. Had the defendant, upon the return of the bill, been insolvent, instead of the drawer, could it have been pretended that the plaintiff would have been obliged to deliver up the bill, and thus surrender the additional security which he had acquired? We think not. If then the plaintiff has a right to sue as holder of the bill, the only remaining question is, whether due notice of the protest was given? And this the court consider as a question of fact, proper to be submitted to the jury. If you think that the giving notice to the drawer on the 10th, and to the defendant on the 11th, was in due time, then the silence of the plaintiff's agent from the 11th to the 19th, will not discharge the defendant. For after giving due notice to the drawer and endorser, if the latter wishes to secure himself in time by resorting to the drawer, he may do so by paying the bill. The holder is not obliged to sue the drawer, unless he chooses to do so.

The jury found a verdict for the plaintiff for the principal and interest of the bill.