ALBANY,
Feb. 1811.

COIT
v.
COM. INS Co.

―――⚙――

Coit and Pierpoint *against* The Commercial Insurance Company.

THIS was an action on a policy of insurance, dated 29th of *September*, 1807, on 45 bales of *sarsaparilla*, specified in the *margin* of the policy, on board of the ship *Paragon*, " at and from *New-York* to *Amsterdam*, upon sea-risk only, including sea-risk during capture or detention," at a premium of *5 per cent.*

The policy contained a printed memorandum in the following words: " It is also agreed, that salt, grain of all kinds, tobacco, indian-meal, fruits, (whether preser-

If any of the terms used in a policy of insurance have, by the known usage of trade, or by use and practice, as between assurers and assured, acquired an appropriate sense, they are to be construed according to that sense.

Parol evidence is admissible to show, that by the general usage, among merchants and underwriters in *New-York*, the word *roots*, first inserted in the *New-York* policies in 1787, is confined to such *roots* as are *perishable in their own nature;* and that *sarsaparilla* is not a *root* perishable in its nature, or included under that term, in the *memorandum* in the policy.

ved or otherwise,) cheese, dry fish, vegetables and roots, and all other articles, perishable in their own nature, are warranted by the assured, free from average, unless general; hemp free from average under twenty *per cent.* unless general; and sugar, flax, flax seed, bread, skins and hides, are warranted, by the assured, free from average under seven *per cent.* unless general; and coffee in bags or bulk, and pepper in bags, free from average under ten *per cent.* unless general."

The cause was tried at the *New-York* sittings, the 20th *December*, 1809, before Mr. Justice *Yates.*

The action was brought to recover the amount of a partial loss occasioned by sea-damage. It was admitted by the plaintiffs that *sarsaparilla* was a *root*, within the general meaning of the term; and the only question between the parties was, whether *sarsaparilla* was to be considered *a root within the memorandum* in the policy.

The plaintiffs offered to prove, that although *sarsaparilla* is a *root* within the general meaning of the term, yet that it had never been considered, either by merchants or underwriters, as a root within the memorandum of the policy; and that the term " roots" was first inserted in the *New-York* policies, in or about the year 1787; that it was then inserted with a view of exempting the underwriters from partial losses on *onions, beets,* &c. being *roots* perishable in their own nature, and in particular reference to an extensive trade in those articles, then carried on between the *New-England* states and the *West-India* islands; that since the insertion of the term " roots," in the *New-York* policies, the *usage* has been to consider the term as exclusively confined to roots perishable in their own nature. They further offered to prove, that *sarsaparilla* was not a root perishable in its own nature; and also that if the words " free from particular average," had been inserted in lieu of the memorandum in the policy, five *per cent.* would have been an exorbitant premium.

The evidence offered was objected to by the counsel for the defendants, who moved for a nonsuit. The judge overruled the evidence, and granted the motion for a nonsuit, which was accordingly entered.

ALBANY,
Feb. 1811.

COIT
v.
COM. INS. Co.

*Brinkerhoff*, for the plaintiffs. The question is, whether *sarsaparilla* is a root within the meaning of the *memorandum* in the policy? Though it is a *root*, according to the general sense of the word, yet it is not a root *perishable in its own nature.* The object of the memorandum was, to guard against claims for trivial losses on *perishable* articles; and, according to the grammatical construction of the clause, the word *roots* is qualified by the terms *perishable in their own nature.* Though the article insured be a root, yet if it is not perishable in its own nature, it is not within the meaning or words of the memorandum.

The insurance is against *sea-risks* only; and if a particular average is wholly excluded, then the plaintiffs could recover only in case of an absolute total loss, or of a general average. But can it be supposed, that they would have given a premium of *5 per cent.* to be insured against *sea-risks* only, if they were not to recover for any particular averages whatever?

Again, the plaintiffs ought to have been allowed to show the usage and mercantile understanding, as to the meaning of the memorandum. In the case of *Scott* v. *Bourdillion,** evidence of usage was admitted, to show that *rice* was not *corn*, within the meaning of the memorandum. In the case of *Sleght* v. *Rhinelander,*† parol evidence was admitted, to explain what was a *sea-letter*, as used in the warranty.

*5 Bos. & Pull. 213. Park, 40. 159. 161.

†1 Johns. Rep. 192. 2 Johns. Rep. 531.

*Wells*, contra. The general rule of law, in regard to admitting parol evidence to explain a written contract, is well settled. Commercial contracts are said to be an exception to the general rule, and open to explanation

* 2 Bos. & Pull.
168.

by evidence of usage; and courts in *England* have certainly gone great lengths in admitting such evidence. But in the case of *Anderson* v. *Pitcher*,* Lord *Eldon* thought it was to be lamented, that parties had not been left to explain their own meaning by the terms of the instrument; and he observed, that the inclination of his mind was, to adhere to the letter of the contract. The oldest cases in which this kind of evidence has been admitted, are *Lethulier's* case,† and *Gordon* v. *Morley*,‡ but in the former case Lord *Holt* dissented. The modern cases in *England*, which support the admissibility of such evidence, are since our revolution; and if the rule is found to be a bad one, our courts are not bound by any authority to adhere to it. They are at liberty to do what Lord *Eldon* said he was disposed to do, if it were *res integra*, adhere to the letter of the contract.

† 2 Salk. 443.
‡ Stra. 1265.
See also 2 Salk.
445.

The decision in *Scott* v. *Bourdillion* was not in contradiction to the contract. *Corn* is a general term in *England*, and it was proper to admit evidence to show what grains were included under that term. But suppose *rice* had been specified, would evidence have been admitted to show whether it was perishable or not? In *Baker* v. *Ludlow*,§ it was decided, in this court, that the words, "all other articles perishable in their own nature," are not applicable to the articles previously enumerated. Salt and tobacco are enumerated; and would evidence be admitted to show that they were not perishable articles? The rule is, that where an article is specified, the general clause is restricted and regulated by the specification. If not specified, then evidence may be received, to show whether it is an article perishable in its own nature.

§ 2 Johns. Cas.
289.

The true construction of the clause is, that all the articles specifically enumerated, and, also, all other articles which are perishable in their own nature, shall be free of average, &c. On the construction contended for by

the plaintiff, it would read " roots, and all other roots perishable in their own nature," &c.

The case of *Sleght* v. *Rhinelander* related to a question of fact, whether a particular paper was a sea-letter or not, and is very different from the present. To allow evidence of usage in this case, would be making a new contract between the parties.

*Brinkerhoff*, in reply. The counsel for the defendants admit, that by the rule, as established in the *English* courts, such evidence is admissible. That rule existed before the revolution, and is binding here. *Park* says, no rule has been more frequently followed than the *usage* of trade, and that the judges have always called in the usage of trade, as the ground of deciding on the construction of the policy, in regard to the particular voyages or risks to which it relates. *Sarsaparilla* is an article as imperishable as mahogany, or the hardest wood; and it never could be the intention of the memorandum to include articles of that nature.

*Per Curiam.* The plaintiffs offered the strongest proof that could be given of a mercantile usage, settling the meaning and extent of the term *roots*, in the memorandum of the policy, and that it did not apply to the subject in question. The only point then is, whether usage is admissible at all, to control the ordinary and popular sense of the term.

The case of *Baker* v. *Ludlow* (2 *Johns. Cas.* 289.) says, that the words in the memorandum, " all other articles perishable in their own nature," were not applicable to the articles previously and specifically enumerated. But that case does not decide the question, how far usage is admissible to explain the sense of the contract; though evidence of usage was there admitted without objection.

The law has been too long settled to be now question-
ed, that if any terms in a policy have, by the known usage
of trade, or by use and practice, as between assurers and
assured, acquired an appropriate sense, they shall be con-
strued according to that sense and meaning. (*Mason* v.
*Skuney*, 1 *Marsh.* 143.  4 *East,* 135.  6 *East*, 207.  5
*Bos. & Pull.* 213.)  This is not only the modern rule,
as to mercantile instruments in general, (*Doug.* 654.)
but it appears to have been the established practice, as
far back as the time of Ch. J. *Rolle*, and of Lord *Holt*.
(*Pickering* v. *Barkley*, 2 *Roll. Abr.* 248. *pl.* 10. *Sty.*
132.  *Lethulier's* case, 2 *Salk.* 443.)  And though Lord
*Eldon*, in the case of *Anderson* v. *Pitcher*, (2 *Bos. &
Pull.* 168.) regretted the rule, yet he admitted that it
was too late to question its force, and that policies must
be expounded with due regard to the usage of trade.
To reject this testimony now would produce the greatest
injustice, for the contract must have been made and un-
derstood, at the time, by the parties, in reference to this
mercantile and practical meaning of the terms employed.

The nonsuit ought, therefore, to be set aside, and a new
trial awarded, with costs to abide the event of the suit.