COLLIER (CAREY v.). See Case No. 2,400.

COLLIER, The (SRODES v.). See Case No. 13,272.

COLLIER (UNITED STATES v.). See Case No. 14,833.

COLLIER WHITE LEAD CO. (MINNESOTA LINSEED OIL CO. v.). See Case No. 9,635.

# Case No. 3,003.

COLLINGS et al. v. HOPE.

[3 Wash. C. C. 149.][1]

Circuit Court, D. Pennsylvania. April Term, 1812.

### CUSTOMS AND USAGE.

What is called the custom or usage of trade, is the law of that trade; and to make it at all obligatory, it must be ancient, so as to be generally known, certain, and reasonable. A usage, of so doubtful authority, as to be known only to a few, and where merchants in the trade differ as to its existence, can never be regarded.

[Cited in U. S. v. Buchanan, 8 How. (49 U. S.) 102.]

Mr. Claudius, residing in Philadelphia, the agent of the plaintiffs, merchants at Rotterdam, was in the habit of procuring consignments to his principals, and of making ad-

vances on the shipments, to the amount of two-thirds of the invoice value, by bills on a house in London. Copies of the invoice and bill of lading, he enclosed to the house in London, as well as to the plaintiffs. In November, 1807, the defendant proposed to ship a parcel of coffee to the house at Rotterdam, upon which Claudius agreed to make the usual advance, and drew a bill on the house in London, in favour of the defendant, for £260 sterling, which was duly paid. The vessel and cargo were lost; and this action was brought to recover back the advance thus made.

The defence was, that according to the usage at Philadelphia in similar cases, it was the duty of the agent to have had insurance effected on this property; and this not having been done, the plaintiffs were liable as if they had themselves been the insurers. To prove the usage, three or four merchants were examined; one of whom stated this to be the usage, but the others knew of no such usage. It appeared, that Claudius had sometimes made the insurance in similar cases, and in others that the shippers had; and upon the whole, it was pretty clear, that the one or the other effected the insurance, as was arranged between the parties. In this case, however, it was proved by Claudius, that he informed the defendant when the shipment was made, that it was too late for him to have it done, and that the defendant said he was about to do it.

WASHINGTON, Circuit Justice, charged the jury. What is called the custom or usage of trade, is the law of that trade; and to make it at all obligatory, it must be ancient, (sufficiently so at least, to be generally known,) certain, uniform, and reasonable. A usage of so doubtful authority as to be known only to a few, and where merchants engaged in the trade differ as they do in this case, as to the existence of it, can never be regarded. The one now set up, is an unnatural one; for, although the shipper may consent to let the agent make the insurance, yet in general, he would prefer making his own bargain; and though the agent may insure to the amount of his advance, for the safety of his principal, yet he may decline doing it, if he is willing to trust to the general credit of the shipper. Beyond the sum advanced, he certainly cannot insure, without an express authority from the owner of the cargo; and this circumstance is strong to prove, that wherever the agent insures, he obtains such an authority from the shipper. This appears to have been the practice of this agent. But even if the custom had been fully proved, this case would be an exception from it, as Claudius not only declined insuring, but the defendant undertook to insure. Verdict for plaintiffs.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]