New trial denied.

Astor<br>v.<br>Union Ins. Co.

*Hammond* v. *Ridgley*, 5 Harr. & John. 215, 264, 265. The possession must be positively and unequivocally adverse. Even possession and receiving rents, offers to sell, or partial sales effected, may as well be acts of a tortious possessor, or of an agent, as of one claiming title under the real owner. *Delancey's lessee* v. *M'Keen*, 1 Wash. C. C. R. 354, 359, 360, *et seq.*; and distance and disabilities in the owner are to be considered and allowed; (id.;) and an adverse character in the possession may be done away by surrender, acknowledgment of the owner's title, or by a discontinuance of the possession, &c. *Holtzapple's lessee* v. *Phillibaum*, 4 Wash, C. C. Rep. 356, 363. Where a widow held a parcel of her husband's estate for nearly 30 years, under a deed in fee from one of the heirs; held, in an action by another of the heirs for an undivided portion of the same land, it could not be presumed that she claimed as tenant in dower, so as to raise the presumption from an acquiescence of the demandant in so long possession, that there was a regular asignment of dower. *Hale* v. *The Inhab. of Portland*, 4 N. H. Rep, 77. A title to an undivided portion of land cannot, unless in a very strong case, be acquired by concurrent possession, or acts of ownership, while the real owner is in possession. *Waldron* v. *Tuttle*, 4 N. H. Rep. 371. So of a trustee as against his *cestui que trust*, as will be seen post, note 301. Per Nott, J., in *Howard* v. *Aiken*, 3 M'Cord, 468, S. P. So of a vendee in possession under an agreement to convey; but not having paid the purchase money. *Richards* v. *M'Kie*, 1 Harp. Ch. Rep. 184. The court refused to found the presumption on a claim of constructive possession under a deed, the description in which did not clearly include the land. *Gibson* v. *Chappel*, 1 Harp. Rep. 28. Nor will a grant of land to a certain boundary, by one claiming beyond it, be received as ground for a presumption that he had released all beyond, especially where he had since conveyed land lying beyond. *Jackson*, ex dem. *Van Schaick* v. *Vincent*, 4 Wend. 633. See also *Palmer* v. *Hicks*, 6 John. Rep. 133, 135; Per Robertson, J., in *Fitzhugh* v. *Croghan*, 2 J. J. Marsh. 436 · and per Marshall, Ch. J., 7 Wheat. 546.

---

### ASTOR AND ASTOR *against* THE UNION INSURANCE COMPANY.

ASSUMPSIT on a policy of insurance, tried at the New York circuit, January 12th, 1826, before EDWARDS, C. Judge.

Where goods are warranted, by the memorandum in a policy of insurance, free from

average unless general, the loss by sea damage must be total in fact, to warrant a recovery by the assured.

The policy of insurance was on *fur*. The title of the invoice was *furs*; under which it

NEW YORK,
May, 1827.
———————
Astor
v.
Union Ins. Co.

\*The claim at the trial was for a total loss. The policy produced at the trial was underwritten by the defendants, for $15,000, at a premium of two per cent. on a cargo of fur owned and shipped by the plaintiffs on board the brig Twey Brudie. The voyage was at and from New York to Hamburgh. The brig sailed October 27th, 1819, the date of the policy, which contained the usual printed memorandum; by which (*inter alia*) skins and hides, and all other articles perishable in their own nature, were warranted free from average unless general. The invoice proved, was headed "Invoice of furs," &c. But in the body, they were described as bear and racoon skins, oppossum, deer, fine fisher, cross fox, martin, white racoon, wild cat, wolf, wolverine, panther, and cub skins, amounting in the whole to between 23 and 24,000 dollars.

It appeared that the brig was wrecked or stranded, on her voyage, near Cuxhaven, but the cargo was saved and transported by land to Hamburgh, where the goods in question were found to be so much damaged, and in such a perishable condition from being penetrated by sea-water,

detailed bear and racoon skins, oppossum, deer, fine fisher, cross fox, martin, wild cat, wolf, wolverine, panther, and cub skins. The memorandum warranted *skins* and hides, and *all other articles perishable in their nature*, free from average unless general. The articles in the invoice were deteriorated by sea damage to more than half their value, and the insured abandoned. In an action upon the policy, *held*, that it was competent for the plaintiff to show in evidence, that the term *fur*, covered the skins in the invoice; and that the terms *hides* and *skins*, in the memorandum, in mercantile usage, did not include them; also that they were not articles perishable in their nature within the meaning of these words in the memorandum. And the jury having, on conflicting evidence upon these questions, found for the plaintiff, though contrary to the charge of the circuit judge, the supreme court refused to set aside the verdict.

Where a question of fact proper for the jury is submitted to and passed upon by them, the verdict will not be set aside as against the weight of evidence, unless it be clearly so; even though it be directly contrary to the charge of the judge.

When the meaning of a word, used to designate an article of trade, is to be fixed by proof of mercantile usage, it may be by the usage of trade among merchants dealing particularly in that article.

Underwriters insuring by certain words are bound to know the mercantile meaning of the words: and are liable according to that meaning.

*Semble*, that the meaning of the clause, *all other articles perishable in their own nature*, in the memorandum of a policy of insurance, extends to those articles not particularly enumerated, which are liable to perish of themselves in the course of the voyage, without any external injury.

Upon the trial of the question whether certain articles are within the memorandum in a policy of insurance providing against particular average, evidence that the agent of the assured urged the taking of the risk, on the ground that the articles would be free from particular average, is inadmissible.

So is evidence showing insurances at a higher premium on non-memorandum articles for the same voyage, by persons other than the underwriter to the policy in question: and that insurance officers commonly charge a higher premium on such articles.

and partly in a rotton condition, that they were sold at
auction for less than one half the invoice price. February
7th, 1820, the plaintiffs abandoned as for a total loss.

The plaintiffs then offered to prove by parol that, by the
understanding of the trade in the city of New York, furs
are not considered to be within the meaning of the words
skins and hides, in the memorandum; skins being those
where the skin constitutes the chief value; and furs those
where the value is constituted by the fur. This was ob-
jected to by the defendants as contradicting or explaining
a written instrument, and because the goods insured were
described by the plaintiff in the invoice as skins. That
if parol evidence was admissible at all, to control the in-
terpretation of the policy, it could only be of general mer-
cantile usage; or of the practice between the assurers and
assured, and not a usage confined to furriers, or persons
dealing exclusively in furs; since, of a usage thus re-
stricted, it was not to be presumed the insurers had any
knowledge, or that the policy was made in reference to it.
The *judge decided, that if the term skins had, by the           [*204]
known usage of trade, or by use and practice as between
assurers and assured, acquired an appropriate sense, it
should be construed according to that sense or meaning;
that parol evidence was admissible for the purpose of
showing this fact. He, therefore, allowed the evidence
offered to be given.

Seven witness were then sworn on the part of the plain-
tiffs. Wm. Howard said he had been a dealer in furs
about twenty years. Furriers generally use the terms furs
and peltries, (all of which are included in the term skins.)
Fur is more perishable when left on the skin; would not
perish so soon from water if off the skin. If furs were
put up in a new puncheon, thought they would keep
twenty years. The skin is liable to perish from damp and
heat alone, (but not so rapidly,) and thereby the fur is
destroyed. Skins with the fur on are as liable to perish
as without it. He calls bear, deer, and wolf skins, and
some people call racoon skins, peltries. Had known fur
off the skin to be imported; but never knew any exported

NEW YORK, off the skin. Furs on the skin perish quickly if wetted ;
May, 1827. but he has known packages wetted at one corner, and the
Astor     injury not to extend beyond the part wetted. Ebenezer
v.
Union Ins. Co. White said he had been a retail dealer in furs about ten
years ago. The understanding generally is, that when you
have an invoice of skins, all those of which the value con-
sists in the fur, are called furs or fur skins ; the others pel-
tries. That racoon skins are not called peltry ; but bear,
deer, and wolf are. Cross fox, wild cat, and panther are
called fur. Bear skins are valuable only with the fur on.
So also the fox, peltries, and those from which the fur is
not usually cut off. Fur is less liable to injury when sepa-
rated from the skin. Skins will mould when covered with
fur and packed. E. Raymond, another dealer in furs, said,
hides and skins are such as are used for leather. Those
not usually tanned are fur. By peltries, he understood
skins without any fur on ; as deer skins. But he gave
merely his own impressions, without knowing the general
[*205]      understanding among merchants, importers, and exporters.
*The term skins is indiscriminately applied to fur skins as
well as others, in invoices. H. Brevoort, for many years a
wholesale dealer and shipper of fur, said, for many years his
understanding and belief was, that the term hides and skins,
as used in the memorandum, did not extend to fur skins ;
and he therefore supposed, that on the average loss of fur
skins, he would be entitled to recover ; but about seven or
eight years ago, he found it was otherwise ; and has since
altered his mode of insurance. Fur skins, when put in a
rum cask, he should not consider as liable to perish any
more than a bale of cloth. Under the term fur, he would
include all skins having fur on them, and valuable particu-
larly for the fur. Understood skins to be a generic term,
including all kinds of skins, as well peltries and fur skins
as others. Mr. Deforest understood furs to mean skins
valuable on account of the fur only ; but skins to mean
such as are valuable only for the skins, though sometimes
this term is used as applicable to fur skins, as well as others.

J. C. Halsey had been a dealer in furs about nine years ;
and never heard the term skins or hides to include fur ;

but understood skins to mean those valuable for the skins only. Supposed, however, that an insurance on skins would cover fur skins. Understood peltries as including deer, bear, and racoon skins, where the fur is not used separate from the skins. Bear, opossum, cross fox, wolf, wolverine, and panther, he thought peltry. Did not think furs well packed and kept dry, as perishable in their own nature. Fur skins are put up with a great deal of care; and he would not consider a bale of fur properly packed as more liable to perish than cloth or tobacco; though, if wet, it would be more liable to perish than a bail of cloth.

<em>NEW YORK,<br>May, 1827.</em><br>——————<br>Astor<br><em>v.</em><br>Union Ins. Co.

A. Voorhies, a dealer in fur for several years, drew the same distinction between furs and skins as the other witnesses. Believed that, on insurance upon skins, he would be entitled to recover on fur skins. Did not think them more perishable than broad-cloths.

The counsel for the plaintiffs here having closed the testimony, the defendant moved for a nonsuit, on the ground *of the insufficiency of evidence. But the judge directed the cause to go to the jury.                                  [*206]

On the part of the defendants, a fur merchant, an insurance broker, and several officers of insurance companies in the city of New York, were sworn; and all concurred in denying that the word skins used in the memorandum, had, as between insurer and insured, acquired a sense which excluded fur skins; and the merchant, who had also been an officer in an insurance company, swore that he had understood skins to include furs; and that this was the understanding among merchants.

It appeared that one Roberts effected the insurance for the plaintiffs as their agent. The defendants offered to prove a conversation of Roberts at the time, in which he urged that the company ought to take the risk at a low premium, because they would not be subject to particular average. The plaintiffs objected to proof of Roberts' representations unless in writing; and unless it was shown that they were authorized by the plaintiffs. The next offer was overruled; and the defendants excepted.

NEW YORK,   The defendants then proved that G. H. had made a ship
May, 1827.  ment of oil on the same voyage; and had insured it in
  Astor     October, 1819, at the American office, at 3 1-2 per cent.
    v.       That oil was not a perishable article within the memoran-
Union Ins. Co.  dum; and that on the same voyage, other goods, not within
the memorandum, and belonging to a different person,
were insured at another office at the same premium; and
that insurance companies always make a distinction be-
tween articles within and without the memorandum, by
demanding a higher premium on those which are subject
to average. The counsel for the plaintiffs objected to the
whole of this evidence; and it was excluded by the
judge.

The judge charged that the plaintiffs had failed entirely
to prove that the term skins, as between insurer and in-
sured, or by general mercantile usage, had acquired an
appropriate sense, so as to exclude skins covered with fur;
but if such proof had been given, it clearly appeared from
the evidence, that fur skins were an article perishable
in their own nature, within the meaning of the memoran-
[*207]      dum; *and on that ground the defendants were entitled to
a verdict. He further instructed the jury, that a claim by
the plaintiffs for a general average could not be sustained.
The jury found for the plaintiffs for a total loss.

*J. Duer*, for the defendants, moved for a new trial, on
these points: 1. That the parol evidence to control the
terms of the policy was improperly admitted; 2. That the
plaintiffs' evidence was insufficient to carry the cause to
the jury; 3. Evidence of Roberts' declarations was im-
properly rejected; 4. The defendants should have been
permitted to prove the difference of premium between me-
morandum and non-memorandum articles; 5. The verdict
was against law and evidence.

He conceded, that the known usage of trade, or use and
practice between assurers and assured, were admissible, to
show that skins in the memorandum did not mean fur. He
said this was so settled in *Coit* v. *The Com. Ins. Co.*, 7 John.
385. The substance of the cases is perhaps better expressed

in *Robertson* v. *French*, (4 East. 135,) that the meaning of a
policy, like that of every other written contract, is to be
first collected from its terms as they are understood in their
plain, ordinary and popular sense, unless they have gene-
rally, in respect to the subject matter, as by the known
usage of trade or the like, acquired a peculiar sense as dis-
tinct from the popular sense of the same words.   The party
must establish the new meaning clearly; the mind must
not be left in doubt.  If there be a doubt, the decision
should be in favor of the popular sense.

Again, here was no usage of trade shown or attempted
to be shown, within the meaning of the cases.  They do
not mean the usage of a particular trade confined to the
article; but usage of trade generally.  Here was no proof
of general mercantile usage.  Unless the sense differing
from the popular one is general and certain, the rule opens
a door to perpetual litigation.

But, admit that fur skins are not within the particular
words skins or hides as used in the memorandum; we show
fur skins to be perishable in their own nature; and thus
*bring ourselves within the general clause of the memoran-      [*208]
dum.   Why are skins used in the memorandum at all?
The reason given by some of the witnesses is, that they are
perishable; and fur skins are equally so with any other
skins.  The phrase, " all articles perishable in their own
nature," in its most extended sense, includes everything;
but, in its technical sense, such articles alone as in their
own nature and constitution, without any external cause,
are liable to decay; or such as are peculiarly liable to be
affected by the perils insured against; or the ordinary perils
of navigation.  The latter appears, from the circumstance that
bar iron is specifically enumerated in this and other usual
memoranda.   No one can say from this evidence, that skins
are not equally liable to be affected from all or any of these
causes.

Again; we offered to show that the premium was, in
fact, reduced, on the supposition that fur skins were ex-
cluded from the memorandum.  Such evidence cannot be
listened to without conviction.  The court had been per-

NEW YORK, plexed by contradictory and circumstantial evidence. We
May, 1827. offered evidence to remove the doubts it was calculated to
Astor     create; and establish beyond all question the understand-
v.        ing of the parties. I challenge a case where parol evidence
Union Ins. Co. is admissible on one side, and not on the other to the same
point. Here the direct question was, what the parties un-
derstood at the time; the intent of the parties in the em-
ployment of a certain term. To this we offer direct evidence.
In every case of a latent ambiguity, which is always created
by parol evidence, *dehors* the instrument, the same kind of
evidence is proper to explain it. Take the common instance
of a bequest to legatees of the same name.

*G. Griffin*, (same side) cited, to the 3d point, *Souverbye*
v. *Arden*, 1 John. Ch. Rep. 240 ; *Birch* v. *Depeyster*, 4 Campb.
385 ; 1 Stark. 210, S. C.; 2 Cranch. 210 ; *Peich* v. *Dickson*,
1 Mason, 9 to 12 ; *Livingston* v. *Delafield*, 1 John. Rep. 522 ;
and *Cole* v. *Wendell*, 8 John. 116.

[*209]

*T. J. Oakley* and *T. A. Emmet*, contra. The skins in
question were used exclusively for the value of the fur;
and the offer was to prove that they had acquired a mean-
ing in the market differing from the word *skins ;* that this
species of skins had acquired the name of *fur*. This we
no doubt had a right to do. (Phil. on Ins. 487, and the
cases there cited.) The judge, in his charge, adopted the
precise language of the decision in *Coit* v. *The Com. Ins.
Co.* The offer was the ordinary one; to show that a
generic term did extend to every article which its ordina-
ry sense might include. It is enough that the usage be
either general or exist between assurers or assured.
(Phil. on Ins. 14, and the cases there cited.) Page 18
of the same author, shows what the usage must be in its
duration and character. (And vid. id. 487.) It is pretty
clear from the memorandum itself, that it did not mean
to use *skins* in their broadest generic sense; for the word
*hides* is introduced. (2 Marsh. on Ins. 819.)

Gentlemen do not understand us, if they suppose we
mean to admit that the sense we are seeking to establish
differs from the common sense of the word among mankind.

We say, first, that in the most usual and popular sense, *skins* do not mean fur skins; that they are universally known and understood by the name of furs: but if not, at any rate, they are so understood, having acquired that meaning by commercial usage. The judge held the case a proper one for the jury upon these questions. He finally charged against us on the fact; but the jury, as they had a right to do, differed with him. One question is, whether the court will disturb the verdict upon the weight of evidence.

The commercial meaning of a term appropriated to a particular article, is the meaning attached to it by those who deal in the article. Those who buy furs and skins are the very men to determine that meaning. In fixing the meaning of a word used to signify any article of produce, you look to what it signifies among the growers, the buyers and sellers. Those who are best acquainted with the term used among dealers, are the best able to speak of *it. Now, the dealers in fur, or fur skins, all swore for us; the insurers all against us. The jury have decided between them. True, the usage should be one among merchants; but among what merchants? It must be, from its very nature, among those who deal in the article. There cannot be a usage among those who have never dealt in it at all. The insurance companies knew nothing except as to the practice at their offices. The usage in question does not signify their meaning, or a meaning confined to them. They are bound to know the commercial meaning of a term used in a policy.

But if a more general usage than that among dealers be necessary, it will be remembered that we proved various prices current in which the skins in question are arranged according to our testimony. [*These were produced on the argument.*]

Proof of a general, uniform and definite usage is required by the opposite counsel; but surely it cannot be necessary to show a usage without exceptions. The word *uniform*, applied to usage or custom, is not to be understood in its literal sense. There is no practice in community which can be set down as general without exception.

NEW YORK,
May, 1827.

Astor
v.
Union Ins. Co.

[*210]

NEW YORK,
May, 1827.

Astor
v.
Union Ins. Co.

The jury have pronounced our usage a general one. That is enough.

But in common parlance and common sense, when we speak of *furs*, we mean skins which are useful mainly for their fur. The distinction is made in our tariff. (Grayd. Dig. Duties, (F.) Ing. Dig. 180.) Whether this be so or not, the jury have pronounced, as was their province, if they thought it not necessary to show a commercial meaning. The course is for the jury to pass upon evidence of this nature. (*Baker* v *Ludlow*, 2 John. Cas 289.) The case cited shows the arrangement in the words of the memorandum.

The question as to the perishable nature of the articles in question, was also put to the jury; and there is certainly no such preponderance of evidence upon this point as to induce the court to interfere on that ground. The true question was, whether they were peculiarly liable to the [*211] *perils insured against. Formerly, skins and hides were not noticed in this part of the memorandum. (7 John. 385, 386.) They were afterwards introduced by name, because not perishable in their nature. (Vid. Ph. on Ins. 486.) Are furs more so? They are always very carefully secured.

The legal construction could not be varied by the conversation with Roberts, admitting him to have had full power. You cannot alter a contract by parol evidence; especially a written agreement. (2 John. 226.) This is the ordinary case of attempting to vary a written contract by parol evidence. Beside, the opinion of Roberts, (and the evidence offered was no more,) as to the construction, can have no manner of effect. But Roberts should have been sworn; the evidence offered on this head was mere hearsay. Nor was his authority shown, to fix the understanding of the parties as to any part of the policy. A misrepresentation of facts is another thing.

This is not, as supposed, the case of a latent ambiguity. The word itself is capable of a definite meaning. It is not like a devise to John Smith, generally, there being many of that name. The ambiguity there arises *dehors* the

instrument. In a case where the word itself is equivocal, you must get at the meaning as you can.

NEW YORK  
May, 1827.  
———  
Astor  
v.  
Union Ins. Co.

The negotiations of the parties, though in writing, cannot vary the effect of the policy. (Phil. on Ins. 8.)

The evidence touching the difference of premium, was inadmissible. The defendants had no right to couple the acts of other offices with those of their own.

*G. Griffin*, in reply. The insurance was on fur, which, in itself, when off the skin, is an article of merchandize. The cargo was fur skins. There is, then, a difficulty with the plaintiffs, which can be got over in no other way than by showing that fur means fur skins. But when they have established this, we contend that they come directly in contact with the memorandum, which excepts skins and hides; not merely hides, which are skins used for leather; but skins in the broad acceptation of the term. It is *for gentlemen to convince the court, that bear skins, &c., are not skins. Look at the dictionary and there is no doubt. So in common parlance. It then remains to show they have acquired a different signification. For this, gentlemen have nothing to rely on but the verdict of the jury. The judge charged them to give a different verdict. I have no disposition to deny due weight to the verdict; but the court cannot avoid perceiving a very strong inclination in the jury against the underwriters; and nothing is more usual than to reverse such verdicts. The usage set up should be most clearly shown. Unless a commercial meaning, fixed, definite, and certain, be established, it should not prevail. It is like proof to establish a custom, which is to operate as an exception to, and in derogation of the common law. No two of the seven witnesses, sworn on the part of the plaintiffs, agree in every particular. Mercantile usage can only be set up when it has existed a sufficient length of time to be known. (*Smith v. Wright,* 1 Caines, 43 to 45.) It then, and not till then, is considered as incorporated into the contract. Here is nothing from which we can conclude that the terms were used by the parties in a sense differing from their ordinary accepta-

[*212]

NEW YORK, tion. Neither the jury nor the court have any right to
May, 1827.
——————— make contracts; but only to interpret them. In doing
   Astor    this, the plain grammatical sense must be adopted. The
     v.
Union Ins. Co. *onus* of establishing a different one lies with the plaintiffs.
The criteron is, what did the parties mean? In what
sense did the assured mean to use the term? All the in-
surance companies understood the term skins in its ordi
nary sense.

Companies will insure memorandum articles much
cheaper than others, because they are exempt from small
averages. I ask whether we are not called on to pay a
loss for which we never received a premium? In the cases
stated, of deviation from ordinary meaning, there was no
doubt as to the proof. And the very fact that we took
only 2 per cent. while 3 1-2 was paid on non-memorandum
articles, shows the intent.

[*213]          Again; it must be shown that all the articles in the
invoice fell under the denomination of fur skins. Here are
7 or 800 bear skins; here are wolf and panther skins.

The jury made us pay for all. The word in the insu-
rance is fur; and all the witnesses agree that the word fur
skins by no means includes every description of skins in
the invoice. If there be a mistake as to any one descrip-
tion of skins, or any one skin, there must be a new trial.
Many of these skins come under the word peltries, which
is the term opposite to furs. Racoon skins come under that
denomination, as is shown by a balance of proof. The
plaintiffs' prices current contradict the witnesses; and a
price current produced on our side excludes bear skins from
the class of furs.

What was said at the time by Roberts was clearly im-
portant; and indeed conclusive on the question of intention.
The authority of Roberts has been recognized by the plain-
tiffs, who have adopted his acts; and must take them alto-
gethor. But it is not a question of authority. It is a ques-
tion of intention. An agent, however, may not only do
the principal thing; but everything incidental to it. (*Fenn*
v. *Harrison*, 3 T. R. 757; 4 id. 177, S. C. *Livingston* v.
*Delafield*, 1 John. 522.) Gentlemen would confine us to

the policy. But by what authority do they give parol evidence? If they may do so, may we not do the same? The rule is universal, that you may, by this evidence, do away a doubt which is raised on the other side by the same kind of evidence. The several authorities which I cited at the opening are in point.

*Curia.* The insurance was on fur. The title of the invoice was furs; under which were detailed bear and racoon skins, opossum, deer, fine fisher, cross fox, martin, wild cat, wolf, wolverine, panther and cub skins. The memorandum warrants skins and hides, and all other articles perishable in their nature, free from average unless general. The loss was not absolutely total; though the goods in question were so much injured in consequence of the wreck or stranding of the vessel, as to warrant the *abandonment. This will not, however, entitle the plaintiffs to recover, if the subject insured is within the memorandum; for it is well settled, that, in such a case, to subject the underwriters, the loss, ii from sea damage, must be total in fact. (Phil. on Ins. 487, &c., and the cases there cited.)

[*214]

It is contended that the goods are covered by the memorandum; 1. as being with the generic term, *skins*; or, if not, then, 2. within the clause, " all other articles perishable in their own nature."

1. There can be no doubt, that, taking the words skins and hides in their largest sense, they include every article of the invoice. But, to obviate this difficulty, which both parties seem to have been fully aware of, the plaintiffs offered evidence that, by the understanding of the trade in the city of New York, the articles are not considered to be within the terms skins and hides; skins being those where the skin constitutes the chief value, and furs were the value is constituted by the fur. It was conceded, both at the trial and at bar, that the policy might be thus explained by showing a known usage of trade, as it is expressed in *Coit* v. *The Com. Ins. Co.*, (7 John. 385, 390.) But it was contended that the offer, and the evidence which followed, were too nar-

NEW YORK, May, 1827.

Astor
v.
Union Ins. Co.

row; being confined to the particular trade in fur or fur skins; whereas the usage should be of trade generally. No case was cited; nor do we think the argument warranted upon principle. The phrase "usage of trade," implies a restriction to that class of merchants who deal in the article. Beyond that circle there can be no usage, such as was sought to be established. To sustain the objection, would, therefore, be at once to overrule the cases which allow a usage to be proved at all. The evidence was properly received.[1]

[1] In respect to the quality or character of a usage, admissable to influence the construction of a contract of any sort, (for the rule in this respect seems to be the same whether the contract be written or verbal, sealed or unsealed,) it must appear to be so well settled, so uniformly acted upon, and of so long a continuance, as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to, and in conformity with it. See the cases supra. Also *Eager* v. *The Atlas Ins. Co.*, 14 Pick., 143, 4, per Wilde, J., *Snowden* v. *Warden*, 3 Rawle, 101, 107. *Smith* v. *Wright*, 1 Cain. Rep. 44. *Van Ness* v. *Pacard*, 2 Peters' Rep. 148. *Loring* v. *Gurney*, 5 Pick. Rep. 16. *Renner* v. *Bank of Columbia*, 9 Wheat. 581, 584, 5, *et seq.* *Lawrence* v. *M'Gregor*, 1 Wright's Rep. 192. *Kendall* v. *Russell*, 5 Dana. 501. *Barksdale* v. *Brown*, 1 Nott & McCord, 517. *Barber* v. *Brace*, 3 Conn. Rep. 9. *Lawrence* v. *Stonington Bank*, 6 Conn. Rep. 529. *Paull* v. *Lewis*, 4 Watts' Rep. 402. *Thomas* v. *O'Hara*, 1 Rep. Const. Ct. So. Car. 308. *Collings* v. *Hope*, 3 Wash. C. C. Rep. 149. *Hayward* v. *Middleton*, 3 McCord's Rep. 121. And whether such is the case with regard to the usage in question, must generally be tried like other matters of fact, by the jury, if there be one. See *Heald* v. *Cooper*, 8 Greenl. 33. *Williams* v. *Gilman*, 3 id. 276. *Rushforth* v. *Hadfield*, 7 East, 224. *Gibson* v. *Culver*, 17 Wend. 306, 7, 8.

The usage need not be general. Usages of particular classes, and peculiar to certain localities, have been freely received. See Cowen & Hill's notes to Phillips' Evidence, pt. 2, p. 509.

Its antiquity, moreover, is of no importance, further than as a circumstance in aid of the main point, which is, to show that the parties knew of the usage, and intended to adopt it as the law of their contract. Per cur. in *Thompson* v. *Hamilton*, 12 Pick. 425, 428, 9. *Kendall* v. *Russell*, 5 Dana's Rep. 503.

We frequently meet with general propositions like the following—"a usage must be reasonable"—and "can never be received to contradict a settled rule of law." See *Frith* v. *Barker*, 2 John. Rep. 335. *Eager* v. *The Atlas Ins. Co.*, 14 Pick. 141. *Homer* v. *Dorr*, 10 Mass. Rep. 26. *Henry* v. *Risk*, 1 Dall. 265. *Bowen* v. *Jackson*, Whart. Dig. ed. 1822, p. 252, § 358. *Stoever* v. *Whitman*, 6 Binn. 416. *Rankin* v. *American Ins. Co.*, 1 Hall's Rep. N. Y. S. C. 619. *Brown* v. *Jackson*, 2 Wash. C. C. Rep. 24. *Winthrop* v. *The Union Ins. Co.* 2 id 9. *Barksdale* v. *Brown*, 1 Nott & McCord, 517.

All the witnesses for the plaintiffs, who were traders in fur, of longer or shorter, standing, and to a greater or less extent, concur in the general and leading distinction, that skins, valuable chiefly on account of the fur, are, in the language of the trade, called fur; and that skins is a term appropriated to those which are valuable chiefly for the *skin. The word "hides" has been laid out of view as a term [*215] confessedly inapplicable to fur skins. The witnesses, when examined as to particulars, ran into some apparent discrepances; but we think the judge was clearly right, in deciding that the evidence should go to the jury; and in refusing a nonsuit.

The witnesses on the part of the defendants had generally been officers of insurance companies. One had been an insurance broker. So far, though well qualified to testify to the understanding of insurers, they were clearly not so well skilled as the plaintiffs' witnesses in the nomenclature of the trade. There was one of them who had also been a dealer in fur. With the exception of this witness, none of them pretend an ability to speak much beyond the insurance offices. So far as their knowledge extended, they concur in supposing that the goods in question were covered by the term *skins*. Most of the witnesses appear to have been cross-examined; probably to an extent which we cannot see, much less appreciate, upon paper.

It must be borne in mind, however, that we are not called upon to pronounce merely what conclusion we might have come to as jurors. All we can do is, to examine the evidence; and if it be such as plainly not to warrant the verdict, we ought to grant a new trial. But the question being confessedly proper for the jury, we cannot undertake to weigh the testimony in nice scales. When a number of commercial men concur in stating that a word used in their trade has acquired a certain sense, we cannot overturn a verdict founded upon such evidence, merely because they have given some particulars and illustrations disagreeing, either partially or wholly, with their general statement. Their credit has undergone the constitutional test. Notwithstanding the charge of the judge,

NEW YORK,
May, 1827.
————
Astor
v.
Union Ins. Co.

[*216]

the jury may have thought the case a very clear one. We were appealed to on the argument by a very imposing illustration; and told that, to sustain this verdict, we must run into the solecism of holding that bear skins are not skins. Yet it is very easy to conceive how the fur skins even of *bears may have acquired a technical commercial meaning. The enumeration in the invoice is of various classes of animals which are hunted in our northern forests, as valuable chiefly on account of their fur. (Ed. Encyclop. Am. ed. tit. Canada.) Others are sought mainly for the use of their skins. The former are the object of the American fur trade; and their skins, especially those used about garments, have come to be synonymous with fur in the popular sense. (Eng. & Class. Dict. Fur, ed. 1813.) The term seem thus very naturally to have acquired a sense among men engaged in this article of commerce, contradistinguished from, and excluding the application of, the generic term skins. The testimony of the plaintiffs' witnesses was corroborated by several New York prices current, in which the kind of goods in question were ranked as furs; and invoices in the fur trade were spoken of at the trial as giving them the same rank.

It is said the technical meaning should be clearly established. Be it so. Though we may think it clearly established in this case, we do not see enough to prevent a jury from coming to that conclusion. They must have been very strongly impressed with the plaintiffs' evidence, or they would not have dissented from the charge of the judge.

Insurers on furs are bound to know the import of the word, among men trading in that article.

2. The remarks made as to the weight of evidence, apply with still greater force, to the other question of fact decided by the jury; that is, whether these furs are an article *perishable in their own nature*. Some of the witnesses for the plaintiffs spoke very strongly on this subject. They put fur skins on nearly the same footing with cloths. It is difficult to fix the precise extent of this clause in the memorandum. Taken in its broadest latitude, it covers

everything. It was probably intended of those articles not particularly enumerated, which are liable to perish of themselves, in the course of the voyage, without any external injury.

*We are not warranted in disturbing this verdict, on the ground that it is against the weight of evidence.[1]

[*217]

[1] A verdict which is clearly against evidence will be set aside and a new trial granted. *Wells* v. *Waterhouse,* 9 Shep. 131. *Corlies* v. *Little,* 2 Green, 373. *Munn* v. *Gairdner,* 3 Brevard, 31. *Hudson* v. *Williamson,* 3 Brevard 342. *Byrnes* v. *Alexander,* 1 Brevard, 213. *M'Bride* v. *Whitehead,* Geo. Decis. Part 1, 165. *Childress* v. *Stone,* Geo. Decis. Part II. 157. *Jenkins* v. *Whitehead,* 1 Smedes & Marsh. 157. *Scott* v. *Brookway,* 7 Miss. 61. *Wait* v. *White,* 5 Pike, 640. *Gibson* v. *Gibson,* 9 Yerg. 329. *Cassels* v. *The State,* 4 Yerg. 149. *M'Coy* v. *Martin,* 4 Dana, 580. *Tiffin* v. *Forrester,* 8 Mis. 642. *Shobe* v. *Morris,* 6 Mis. 489. *Yale* v. *Yale,* 13 Conn. 185. *Brown* v. *Handley,* 7 Leigh, 119. *Mahon* v. *Johnston,* 7 Leigh, 317. *Brugh* v. *Shanks,* 5 Leigh, 598. *Mayer* v. *Wiltberger,* Geo. Decis. Part II. 20. Supra, 236.

Where a variety of testimony is fairly submitted to the jury, and no instruction asked of the court, or question of law raised, a new trial will not be granted unless the preponderance of evidence against the verdict is very great. *Kellogg* v. *Budlong,* 7 How. Miss. 340. *Ellzey* v. *Stone,* 5 Smedes & Marsh. 21. *Yarborough* v. *Abernathy,* 1 Meigs, 413. *Perry* v. *Smith,* 4 Yerg. 323. *Sellars* v. *Davis,* 4 Yerg. 503. *Pettitt* v. *Pettitt,* 4 Hump. 191. *Grubb* v. *M'Clatchy,* 3 Yerg. 442. *Harbour* v. *Rayburn,* 7 Yerg. 432. *Martin* v. *Withington,* 4 Mis. 518. *Wilson* v. *Burks,* 8 Mis. 446. *Rennick* v. *Walton,* 7 Mis. 292. *Lowry* v. *Orr,* 1 Gilman, 70. *Todd* v. *Boone County,* 8 Mis. 431. *Bagshaw* v. *Dorsett,* Geo. Decis. Part II. 42. *Davis* v. *Hale,* Geo. Decis. Part II. 82. *Pendleton* v. *Mills,* Geo. Decis. Part II. 166. *Bonds* v. *Gray,* Geo. Decis. Part II. 136. *Walker* v. *Tatuum,* Geo. Decis. Part II. 161. *Wilson* v. *Natioris.* 5 Yerg. 211. *Knight* v. *Mantz,* Geo. Decis. Part I. 22. *Irwin* v. *Morell,* Dudley, Geo. 72. *Flourney* v. *Coxe,* Dudley, Geo. 5. *Faber* v. *Baldrick,* 3 Brevard, 350. *Swipes* v. *Remourssin,* 2 Brevard, 33. *Lavall* v. *Cromwell,* 3 Brevard, 463. *Brugh* v. *Shanks,* 5 Leigh, 598. *Bank* v. *King,* 2 Green, 45. *Jackson* v. *Packer,* 13 Conn. 342. *Stanley* v. *Whipple,* 2 M'Lean, 35.

A verdict clearly against evidence will be set aside, and a new trial ordered. *Conrad* v. *Williams,* 6 Hill, 444.

It will be granted in an action on a policy of insurance, where the jury has found for the plaintiff, but it appears from the evidence, that the vessel was not seaworthy. *Mumford* v. *Smith,* 1 Cai. R. 520.

It will be granted where the weight of evidence is in favor of the applicant, and it appears that justice has not been done. *Jackson* ex dem. *Le Roy* v. *Sternbergh,* 1 Cai. R. 162.

The defendants offered to prove that Roberts, who effected the policy as agent of the plaintiffs, urged the taking of the risk at low premium, on the ground that the articles would be free from particular average. This evidence was clearly inadmissible. In the first place, it was no more than the hearsay opinion of a third person. It was not a stipulation. It was not the representation of a fact. At most, it was the expression of an opinion as to the meaning of the memorandum. It is certainly not within the power of agent to fix by his opinion the meaning of a policy which he is authorized to effect. The plaintiffs, it is true, have adopted his acts; but not such a legal construction of them as he may have given, though at the time of executing his power. His opinion was not a part of the *res gestœ*. It was said a latent ambiguity, being created by parol evidence, may, in all cases, be removed by parol. Hearsay, however, is no evidence. If the defendants wished to avail themselves of Roberts' opinion, they should have sworn him. It is not necessary to say, whether such an opinion coming from the plaintiffs themselves might not, under the circumstances of this case, have been admissible. Perhaps it would, if expressed at any time, as weighing upon the question of commercial meaning, or the sense in which the memorandum was in fact understood between the parties. (1 Mass. Rep. 11, 12.) But if this be so, it does not follow that the unsworn opinion of a third person could not have any weight.

The offer to prove insurances at a higher premium on non-memorandum articles, for the same voyage, at other offices, and that insurance offices commonly charge a higher premium on these, was properly overruled. It would not

A new trial will be granted where the former verdict was contrary to evidence. *Hart* v. *Hosack*, 1 Cai. 25.

Where there is room for the least criticism upon the import of the words, it is properly a question for the jury, whose decision is conclusive. *Ex parte Bailey*, 2 Cow. 479.

A verdict will not be set aside as against evidence, unless it be decidedly against the weight of testimony submitted to the jury. *Jackson* v. *Loomis*, 12 Wen. 27. (N. Y. Dig. p. 599, tit. *New Trial.*)

go even to show the understanding of this particular com-
pany. The charging of a higher premium elsewhere,
might have been the very reason why the plaintiffs made
insurance at the office of the defendants. The custom of
this office was not proposed to be shown; and if the offer
had been made, it would have gone merely to their own
*understanding; not that of the plaintiffs, or of the trade
generally. An inquiry into the relative amounts of premi-
um any where, could determine nothing to the question.

[*218]

The judge being right in his legal decisions; and there
not being, in our opinion, a preponderance of evidence in
favor of the defendants sufficiently strong to warrant set-
ting aside the verdict as against evidence, a new trial must
be denied.

New trial denied.