(36 App. Div. 94.)

RICHARD et al. v. HAEBLER et al.

(Supreme Court, Appellate Division, First Department. January 13, 1899.)

1. CUSTOMS—EFFECT AS TO CONTRACTS.
    Where a contract calls for the delivery of 8,000 barrels of cement, each to weigh 180 kilos gross, evidence of a usage to deliver less than this for a barrel is incompetent.

2. SALES—REFUSAL OF ACCEPTANCE—GROUNDS.
    That a buyer refused to accept a shipment of cement short in the weight contracted for, solely because not made by a certain line of steamers, does not justify recovery for a subsequent refusal on the ground that it was short in weight, the seller not having elected on the first rejection to consider the contract rescinded.

3. SAME—BURDEN OF PROOF.
    In an action for damages for a refusal to accept goods sold, the burden is on the seller to show that the tender made was within the terms of the contract.
    Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Oscar L. and Edwin H. Richard against Theodore Haebler and another. From an order setting aside a verdict for plaintiffs, they appeal. Affirmed.

This action was brought on a contract, the defendants having refused to accept goods tendered. The contract called for the delivery of 8,000 barrels of cement, in stated shipments of 500 barrels each, from Antwerp, "at one dollar sixty-two and one-half cents ($1.62½) for each barrel ex dock, * * * of good, merchantable quality. * * * Barrels to weigh 180 kilos gross. * * * Cement to be taken by buyers from dock at their expense on arrival." The plaintiffs ask for damages for the defendants' refusal to accept three shipments. The defense presented is that the barrels were of less than the stipulated weight, and were not in merchantable condition, and three counterclaims of $300 each are made for damages arising by reason of plaintiffs' failure to fulfill the contract. On the trial it appeared that the average weight of the sound barrels of the three shipments, on the New York dock, as weighed by the United States customs weighers, was about 390 pounds, instead of 396 pounds, the latter figure being the accepted equivalent of 180 kilos, a kilo representing 2.20 and a fraction pounds. It further appeared that many of the barrels required recoopering at the New York dock, and that the plaintiffs offered the services of their cooper. The only evidence as to the weight of the barrels when shipped was the bills of lading and the consular invoices, which referred to them as of that weight. Evidence was admitted, to which

defendants excepted, to show the custom of the cement trade as to the general understanding with regard to weight of barrels and what weight is considered acceptable. The plaintiffs' witnesses claim that a tender is good in such a case if the average weight is within 10 pounds of that mentioned in the contract. Witness Ruttenau, who had been connected with the plaintiffs' firm, testified: "The average weight that would be received and accepted under the custom and usage of this market would be from 388 to 390 pounds." A cement dealer, Kreuzweser, for the plaintiffs, testified, "I should judge, as to a shipment weighing 180 kilos on the other side, if it gets here in good condition, the barrels weighing from 385 to 395 pounds would be accepted." And one Corbett, also in the cement business, testified for the plaintiffs: "The Portland cement is supposed to weight 180 kilos or 396 pounds, but no shipment, of course, is exactly the same. * * * They accept cement of any weight not running below, say, ten pounds of that weight. * * * Belgian Portland cement is shipped from abroad for Belgium, and the French weight of 180 kilos or kilograms is given. It is on the consular invoice; it is very often branded on the barrels." The testimony of the defendants' witnesses as to trade custom is different. The defendant Haebler testified: "The standard weight of a barrel of cement was 400 ponds. * * * The standard weight of a barrel of cement on the other side of the ocean is 180 kilos. That is the standard weight, all over the continent. In England, 400 pounds, and so in America. A kilo, in pounds, is 2.20 and a little fraction. That is the regular standard weight, as recognized by the customer, and as recognized by all importers; consequently 180 kilos make 400 pounds. If you take a barrel of 180 kilos, and weigh it in English pounds, it weighs 400 pounds. I am familiar with the customs of the cement trade in New York City. * * * A barrel is supposed to be the standard weight,—400 pounds. Customers, as a rule, do not weigh cement; nor do importers, as a rule." And, in reply to the question, "Do you know, from your knowledge of the cement business, whether it is the custom here to deliver barrels which weigh less than 390 pounds, as a delivery on a contract of this kind?" answered, "No, sir; there is no custom with reference to the weight of a barrel." Defendants' witness Christian, a dealer in cement, testified: "The standard weight of a barrel of Belgian Portland cement is 400 pounds, or 180 kilos, which is stamped on the label when it is barreled, and when it arrives here we sell it for 400 pounds. * * * The average weight of the barrels that I receive in my consignments from abroad, Belgian Portland cement, is 400 pounds. The average they will weigh here will run up about 396, 397, 398 pounds; that is the average weight of Belgian Portland cement received here. That should be the average. * * * Portland cement of this Belgian variety is sold by the barrel, supposed to contain 400 pounds, and it is not sold by the average weight at all." A building material dealer, Hookey, testified for the defendants: "It is generally supposed that a barrel of Belgian Portland cement should weigh 400 pounds. * * * There is no custom in the New York cement trade with reference to receiving, upon a contract for the delivery of cement, barrels of cement weighing less than 396 pounds. * * * They generally expect 400 pounds to a barrel of cement. * * * When nothing is said about weight, we are supposed to get 400 pounds of cement." A dealer in masons' materials, L'Hommedieu, testified for the defendants, in reply to the question, "When you have cement delivered to you on your dock, how many pounds do you expect to receive in each barrel of Belgian Portland cement, in accordance with the usage and customs of the New York market?" "Within 2 or 3 pounds of 400 pounds. I do not accept a shortage of more than 2 or 3 pounds, not less than 396 pounds, which is the actual weight expected; possibly may run 400 pounds. I expect from 396 to 400 pounds;" and later testified, "I would not accept 390 pounds knowingly." Another of defendants' witnesses, Clonin, a dealer in building material, testified: "I do not specify the weight in each contract I make. We don't specify the weight. The weight is 400 pounds. * * * I have been in the business of buying Belgian Portland cement for ten years. * * * 180 kilos is the French measure,—2.20 pounds and a fraction.

On this evidence, the judge below charged: "There has been some evidence adduced here to show that, in the purchase and sale of cement in this market,

it is not customary to specify the number of pounds that each barrel shall weigh, but there is a sort of general weight ·which cement has, and that, when contracts for the sale or purchase of cement are made, they are made at so many barrels, without specifying the number of pounds' weight which is to be contained in each barrel.  The parties to this agreement were more specific, and they did not content themselves with contracting for the delivery of 8,000 barrels of cement, but they specifically agreed that the 8,000 barrels * * * should be of the gross weight of 180 kilos.  * * * In considering the testimony as to the weight, there are two things which you must take into consideration:  In the first place, that it was not the contract of the plaintiffs that they would deliver 500 barrels of cement, which should average a certain weight, but that they should deliver 500 barrels of cement, each one of which should be of a certain weight; that is, the weight which makes them merchantable property, at least in this market.  And you must consider, also, the testimony of the weighers; that it is a reasonable inference from their testimony that where the average weight of barrels of consignments of cement, ascertained in the way in which they ascertained that weight,—that is, by examination of the sound barrels,—that where the average weight appears to be 390 pounds, for instance, there must be, in all probability, a considerable number of barrels in that shipment which would fall below that weight.  It has been attempted to be shown to you here, by testimony, that there is a usage or custom in the cement trade by which barrels weighing less than 396 pounds * * * were accepted as good delivery; * * * and it is contended that, under the custom of the trade, the barrels of cement tendered under this contract were within the meaning of the parties in making this contract.  It is necessary to be very careful, in applying usage or custom of any trade to modify a specific written contract between the parties; and, where that can be allowed at all, it can only be allowed in cases where it appears clearly, by the preponderance of evidence, that the custom is uniform throughout the trade, is well established, is well known, and is a reasonable one."  The judge excluded evidence as to whether the written contract was modified by oral agreement that shipments were to be made by the Red Star Line.  It appeared that the defendants had rejected the first of the shipments in controversy before its arrival, on the ground that it had not been made by that line of steamers.  The plaintiffs contended that the defendants could not subsequently reject that shipment on the ground that it was under weight; but on this point the learned judge charged:  "If they are justified upon either ground, they are justified in·their refusal.  The first rejection was not accepted by plaintiffs as a rescission of the contract."  The jury returned a verdict in favor of the plaintiffs.  The defendants moved to set aside the verdict, and for a new trial, which motion was granted, and from the order entered thereon the plaintiffs bring this appeal.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Rudolf Dulon, for appellants.
Robert B. Honeyman, for respondents.

O'BRIEN, J.  The fair inference to be drawn from the testimony, whether offered by the plaintiffs or the defendants, is that it was the common practice to purchase cement by the barrel, and not by weight, and that when so purchased a barrel was expected· to weigh about 180 kilos, and that a good delivery would be of barrels which weighed within 10 pounds or 12 pounds of 180 kilos.  That is to say, there being 2.20 and a fraction pounds in a kilo, 180 kilos therefore equaling 396 pounds, where the contract was for the purchase of barrels of cement it was expected by both parties that they would contain about that number of pounds, but it was not·regarded as a fatal variance if they fell no more than 10 pounds in weight a barrel below that figure.  The

reason given for the willingness to accept barrels thus below the standard weight as a good delivery arose from the fact that, even if the barrels were up to weight when packed and shipped from Belgium, they might, through a process of sifting while on the voyage, lose in weight. Were the present contract merely for the sale of barrels of cement, therefore, there would be a foundation for the introduction of evidence as to custom or usage on the question of how many pounds of cement the barrels should contain in order to be a good delivery under such a contract. We think, however, that it will not be disputed that the parties to a contract having reference to Belgian cement have the right to contract as to the exact amount of cement in weight that should be delivered. In other words, it was entirely competent for the parties to agree, one to sell and the other to purchase, a certain number of barrels of cement, and to stipulate in definite terms as to the precise weight of the barrels. When parties so contract, it has been repeatedly held that "usage will not be allowed to vary the terms of the express contract, embodying in clear and positive terms the intention of the parties." Wigglesworth v. Dallison, 2 Smith, Lead. Cas. p. 869, note. Or, as expressed in Silberman v. Clark, 96 N. Y. 522: "Where the contract is unambiguous, the meaning of the language used cannot be changed or varied by parol evidence." It will therefore be seen that the question presented is as to whether the parties here have contracted in specific terms as to the quantity of cement that should be contained in the barrels. If we take the language of the contract, we find that this was more than a sale of 8,000 barrels of cement, because there was an express provision that the barrels were "to weigh 180 kilos," and the only thing uncertain or ambiguous about the words arises solely from the use of the foreign measure of weight. In the present case, however, this presents no great difficulty, for there is no dispute about the meaning of a kilo, it being conceded by both parties exactly what it represents in American pounds. There is, furthermore, no question but that the barrels in the three shipments tendered did not come up to the contract as to weight, and it only remains to determine whether it was competent to excuse the failure in complying with the terms of the contract by evidence of usage or custom of the trade that barrels of less weight were a good delivery. We think that such evidence was not competent. The principle of law by which such evidence may be introduced, as concisely stated in Robinson v. U. S., 13 Wall. 363, is that evidence as to "custom or usage is properly received to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, the meaning of which could not be ascertained without the aid of such extrinsic evidence, and such evidence is used on the theory that the parties knew of the existence of the custom, and contracted in reference to it." In the present case, it is conceded that a kilo is equivalent to 2.20 and a fraction pounds, and no explanation is necessary as to the meaning of the language employed. Both parties clearly understood for what they were contracting, and they took the additional trouble to express their intention in precise words.

It was not made to appear that the barrels weighed 180 kilos, either in Belgium or at New York, the plaintiffs merely claiming that there

was an inevitable sifting on the voyage, and that delivery was not intended on the New York dock, but on board ship at Antwerp. Such a contention does not aid plaintiffs, for, as stated, there is no proof that the barrels ever contained 180 kilos of cement in Belgium; and there is force in the defendants' claim that the contract specifies the weight which should be delivered in New York. The contention of the plaintiffs, with regard to the first of the three shipments in question (the one known as the Salerno shipment), that the defendants should be held for damages for its nonacceptance on the special ground that they had originally rejected that shipment solely for the reason that it had not been made by a certain line of steamers, and the defendants had so notified the plaintiffs, is also of no moment. As pointed out by the learned judge below, the only evidence of the weight of the barrels of that shipment, as well as the others, being the testimony of the United States government customs weighers, which showed that on arrival the cement was under weight, there was good cause for rejection, even if the first refusal was wrongfully made; the plaintiffs not having elected to consider the contract rescinded on notice of the defendants' first rejection. In bringing this action, therefore, for damages for the defendants' refusal to accept the three shipments of cement, the burden of proof was on the plaintiffs to show that the tender made was a good one, and within the terms of the contract. Instead of so doing, no evidence was offered other than that of the bills of lading and the consular invoice, both of which merely referred to the barrels as of 180 kilos, to show that the barrels had ever weighed the stipulated amount, either in Belgium, or Antwerp, the port of shipment, or in New York, the port of delivery. Upon arrival, when weighed, the shortage was manifest, and the plaintiffs undertook to substitute for evidence of performance evidence of custom, to explain why the barrels, when they arrived in New York, were not up to weight. The burden was on the plaintiffs to show that the contract was fulfilled, and this was not shown. Evidence as to the matter of custom, if admissible at all, could only be rightfully received after the plaintiffs had proved themselves able and ready to furnish the full weight of cement called for by the contract. As stated, we do not think that such evidence as was admitted with regard to custom was competent, and the case of O'Donohue v. Leggett (Sup.) 8 N. Y. Supp. 426, is directly in point. In that case, which was an action on a contract which called for the delivery of 1,700 piculs of coffee, and the amount unladen from the ship proved to be but 1,645.50 piculs, the court said:

"The contract was in no way indefinite or qualified as to the quantity, but the sellers by means of it undertook to deliver this quantity, and their contract could not be legally performed by delivering that amount (1,645.50 piculs), as there was no waiver on the part of the defendants to the right to demand full and complete performance of the agreement." "Where a contract is clear and definite, as this was in this respect, evidence of custom or usage to change or vary it cannot be legally received."

To summarize, therefore, where the language employed in a contract is vague, indefinite, and ambiguous, then parol evidence is competent to explain it; or where trade terms uncertain or indefinite in meaning are used, then evidence of trade usage or custom may be resorted to

in order to ascertain their intent and meaning. This, however, is but the formulation of a fundamental rule, applicable alike to contracts, wills, and all written instruments, that what is to be ascertained is the real intent and meaning of the parties to the instrument. The only thing doubtful in the contract under consideration is the word "kilo," the measure of weight used in a foreign country. Unquestionably, it is competent to show its meaning, but when this is ascertained all doubt is removed. There is here, moreover, no dispute about the meaning of the word, both sides agreeing that it is equivalent to 2.20 and a fraction pounds. Although its precise meaning is thus conceded, the appellants contend that it is competent to go further, and show by parol, or by a trade usage or custom, that it means something else. The danger of resort to such evidence is clearly shown by this record, wherein the witnesses differ,—some testifying that it means 2.20 and a fraction pounds, which is its definite and literal meaning; and others, that it may be something more or less, thus making it an indefinite and uncertain measure of weight. Although impossible to reconcile such conflicting testimony, we have some reasons for inferring that the witnesses approached the subject from different points of view. Thus, where cement is sold not by precise weight, but by barrels, it is generally regarded in the trade that it is sufficient if a barrel approximates in weight 180 kilos. This contract, however, was not for 8,000 barrels merely, but was one for the sale of 8,000 barrels, "barrels to weigh 180 kilos gross." Under such a contract, where the meaning of the language used is definite and certain, the only result of admitting evidence of usage or custom would be to render it ambiguous, and to substitute for the contract made one entirely different. We think the order appealed from should be affirmed, with costs.

All concur, except PATTERSON, J., dissenting.

INGRAHAM, J. I concur with Mr. Justice O'BRIEN. The plaintiffs agreed to deliver, in the city of New York, 8,000 barrels of cement, at $1.62½ for each barrel, "ex dock," barrels to weigh 180 kilos gross. This contract was made in New York, dated in New York, the cement to be delivered upon the dock in New York, and the barrels were to weigh 180 kilos at the point of delivery upon the dock in New York. The contract is specific and unambiguous. It called for barrels of cement weighing 180 kilos each, and it was barrels weighing 180 kilos, only, that the defendants were bound to accept. As stated by Mr. Justice O'BRIEN, there was no dispute as to the equivalent in pounds of a kilo, but I think that the word "kilo" is now a recognized unit of weight in this state, of which the court will take judicial notice. It is so recognized in the Revised Statutes of the United States (section 3570), which declares the equivalent in our system of the various terms of weights and measures in the metric system, and enacts that, in the construction of contracts and all legal proceedings, the equivalent established shall be recognized. In all English dictionaries it is recognized as a word incorporated into the English language. Thus, in the Standard Dictionary the word "kilo" is defined as an abbreviated form of kilogram; and kilogram is defined as, "in the metric system, a unit

of mass (or weight), originally defined as the mass of one cubic decimeter of water at its maximum density, but now, practically, as the mass of a certain piece of platinum preserved in the archives of the International Metric Commission at Paris," equaling 2.-204621225 pounds, or 15,432.35 grains. The same definition is contained in the Century Dictionary. In the Imperial Dictionary, the word "kilogram" is defined to be a French measure of weight equal to about 2.2 pounds avoirdupois. In Worcester's Dictionary, it is defined as a French weight equal to 2.306 pounds. And in Webster's Dictionary, it is defined as, "in the new system, 1,000 grams, and equal in weight to 2 pounds 5 and a half drams." Thus, in all our dictionaries the word is recognized as one of known significance in the language, and its equivalent in pounds is stated. It has thus become a word in common use in the English language, of which the courts will take judicial notice. The evidence is conclusive and undisputed that the barrels of cement tendered by the plaintiffs to the defendants did not weigh 180 kilos when they were delivered at New York, "ex dock." The equivalent of 180 kilos in pounds would be upward of 396 pounds, and there is no evidence to show that a single barrel was of the weight called for by the contract. The burden of proof was upon the plaintiffs to show that the barrels tendered were as called for by the contract, and, as stated by Mr. Justice O'BRIEN, evidence of a usage is not admissible to contradict the plain and unambiguous provisions of a contract. Evidence of usage would not have been admitted to prove that barrels meant boxes, or that 7,950 barrels meant 8,000 barrels. I can see no reason why evidence of custom should be competent to show that 179 kilos meant 180 kilos or that 388 pounds meant 396 pounds. I think the order appealed from should be affirmed.

PATTERSON, J. (dissenting). I am not able to concur in the opinion of the court on this appeal. I think the order should be reversed, and the verdict reinstated. The contract between the parties was for 8,000 barrels of Portland cement, the particular words upon the meaning of which the case turns being, "barrels to weigh one hundred and eighty kilos gross." There is nothing on the face of the contract itself to show whether that provision referred to the weight at the port of shipment in Belgium or the weight on arrival at New York. The defendants in their brief admit that the contract was virtually for goods "to arrive." They bought merchandise to be imported. They must have known that those goods could not be entered unless they were invoiced at the correct sworn weight, expressed in the foreign terms of weight obtaining in the country whence the shipments were made, for the law so requires. There is nothing in the contract as to the number of pounds. It is shown by evidence that a kilo, by strict calculation, is the equivalent of 396 pounds avoirdupois; but the defendants offered proof to show that the standard weight of a barrel of cement is 400 pounds. It was shown that Portland cement, put up in barrels and transported across the ocean, will always sift, and that there will always be some loss in weight. In setting aside the ver-

dict, the trial judge has construed the contract as containing a strict requirement that the barrels should average, at the time of delivery, 396 pounds. On the trial, the view he took of the subject was, to use his own words, addressed to the plaintiffs' counsel: "I think you have got to deliver, under this contract, barrels of cement of a reasonable average weight, according to the custom of the trade." While that may not be precisely correct, I think the fair statement of the duty of the plaintiffs is that they were required to make deliveries in accordance with the intention of the parties. If that intention were that the barrels should average on the dock 396 pounds, strict weight, than that which was done in part performance of the contract by the plaintiffs was insufficient. But if the parties intended that delivery should be made of barrels to weigh 180 kilos gross, according to commercial usage, then it was for the jury to say, on the proven facts, whether that which was done by the plaintiffs under the contract, up to the time at which it was repudiated by the defendants, was sufficient performance that far. The plaintiffs' claim is that it was thoroughly understood in the trade that, in consequence of the fact that with all Portland cement transported across the ocean there will be sifting and leakage, it was the usage among all dealers in cement to accept, as good deliveries of 180 kilos, packages that should average not less than 388 pounds, thus allowing for the inevitable leakage of even sound packages. The court admitted testimony of that usage, and, as I think, properly, and the case is controlled by it if the jury found, as they must have done, certain necessary conditions to make that usage effective.

It is undeniable that evidence of a custom or usage inconsistent with the terms of a contract is not competent, and that it can only be resorted to, to explain the intent of parties, when that intent cannot be ascertained without that evidence, and that it never can be given to contradict or vary the terms of a contract. Collender v. Dinsmore, 55 N. Y. 200. In this case, there is nothing to show that either party to this contract expected or understood, or intended, that 396 pounds, actual and absolute weight, should be required on delivery as the equivalent of 180 kilos. It is fair to presume that they were contracting with respect to commercial kilos, as understood among dealers in imported cement at the port of New York. Evidence to show what that was, as bearing on the intent of the parties, is admissible. In Miller v. Stevens, 100 Mass. 518, evidence was allowed to show that, in a written contract for the purchase of barrels of petroleum, the word "barrel" meant a vessel of a certain capacity, and not the statute measure of capacity. There is a provision in the Revised Statutes of the United States (section 3570) declaring the equivalent in our system of the various terms of weights and measures of the metric system, and enacting that, in the construction of contracts and in all legal proceedings, the equivalents established shall be recognized. It is not claimed, or suggested even, by counsel, that that statute controls this case, and hence it is unnecessary to say anything further respecting it. The evidence offered in this case was that, by barrels "to weigh one hun-

dred and eighty kilos," was intended that which was recognized by all dealers as being 180 kilos, for the purposes of a contract, and not the exact equivalent in pounds of a foreign standard of weight. In Whitney v. Manufacturing Co. (Sup.) 2 N. Y. Supp. 438, affirmed 121 N. Y. 682, 24 N. E. 1098, referring to the terms of a contract requiring that bottles which, by express stipulation, were to weigh "twenty-two ounces, and be of uniform weight and color," it was held that these words were not to be understood in a strict sense; the court saying, "They are to be understood in the particular sense in which they were used in the trade, a product of which is the subject of the contract; and that evidence of usage is admissible to explain words used in such particular sense is well established." There is nothing in the case of O'Donohue v. Leggett, 134 N. Y. 40, 31 N. E. 269, which affects this question. There, evidence of a custom was disallowed because it would, in effect, alter the contract very materially,—that is to say, evidence of a custom for a buyer to accept or reject coffee after the receipt and examination of samples, there being no provision whatever in the contract relating to samples. In this case, there is nothing in the evidence offered which contradicts the terms of the contract, but it simply goes to show that these parties were contracting with reference to that which was thoroughly understood in the trade to be, in commerce, the equivalent of a barrel containing 180 kilos, Belgian weight, on the arrival of such a package in New York. There was sufficient testimony to show the existence of the usage or custom in the particular trade. With that evidence, the written contract is applied to the subject-matter, to explain expressions used in a special sense by particular persons as to a particular subject, and to give effect to language in the contract as it was understood by those who made use of it. When such usage is proven, it is deemed to be a part of the contract, and to enter into the intention of the parties, and so they are presumed to contract with reference to the usage shown to exist at the particular place in which, and relate to the trade as to which, they enter into agreement. It is so far established, and so far known to the parties, that it must be supposed that their contract was made with reference to it. Walls v. Bailey, 49 N. Y. 469. If the contract, to recover damages for the breach of which this action was brought, had said, in so many words, that the barrels, on delivery, must be of the average weight of 396 pounds, there would have been a fixed term of the contract which could not be varied; but when weight is to be determined by a foreign standard, to ascertain which proof must be given, it is open to inquiry as to what the parties really intended to contract for. I think this is one of those cases in which evidence is admissible to show that the parties were dealing with a term as understood at the place and in the trade in which the contract was made. As this is a particular usage of a particular trade, all that has been said would be of no consequence, unless the knowledge of the usage were brought home to the defendants. On the evidence, it was for the jury to find whether the usage existed, and whether the defendants knew of it. I think

the order setting aside the verdict was wrong, and that it should be reversed, the verdict reinstated, and the plaintiffs be allowed to enter judgment upon it.