DANIEL L. MILLER, JR. *vs.* SAMUEL STEVENS & another.

Oral evidence is admissible to show that in a written contract for the purchase of a certain number of "barrels" of petroleum oil at so much a gallon, the word "barrel" means a vessel of a certain capacity, and not the statute measure of quantity; and for this purpose, evidence that petroleum oil is often sold in barrels and that the barrels are usually of such certain capacity is competent, as is also evidence that the barrels exhibited by the seller at the time of his offer to deliver, some two months after the date of the contract, were of said capacity; and that the purchaser, in all the discussions concerning the delivery, did not suggest that the barrels were not what the contract required; and that the purchaser at said time intended and was ready to receive the barrels, if he had considered the oil of the requisite quality.

CONTRACT. Trial in this court, before *Hoar*, J., who made the following report:

"The plaintiff contracted to sell to the defendants 1000 barrels

petroleum oil, in two contracts of 500 barrels each; each of which was in form as follows : ' Bought for account of Messrs. Samuel Stevens & Co., Boston, from Daniel L. Miller, Jr., agent, Philadelphia, 500 barrels refined petroleum, fire test 110° or upwards, color prime light straw to white, at 38½ cts. per gallon, in bond, to be delivered in bonded warehouse in Philadelphia. Order, prime shipping. Terms, cash on delivery; which delivery is to be made during the month of December next, at the buyers' option, they giving the sellers ten days' notice within that month. William Hastei Smith, Broker. Philadelphia, October 19, 1866.' The plaintiff was and is a resident of Philadelphia. The defendants, at the time in question, resided in Massachusetts, doing business in Boston and New York.

" On December 31, 1866, the plaintiff tendered to the defendants certain specific barrels of refined petroleum oil, which appeared by the evidence to contain 42 gallons to the barrel, in pursuance of said contracts ; but the defendants refused to accept the same, for the reason, only, that they denied that the oil was of a fire test of 110°. On December 31, 1866, oil had materially fallen in price since the date of the contracts.

" There was no evidence in the case tending to show that the particular oil tendered was in barrels, or indeed in existence, at the date of the contracts ; and it did not appear whether refined petroleum oil was universally sold in barrels, or sometimes in barrels and sometimes in bulk. There was no evidence offered on that subject; but there was evidence that it was often sold in barrels of 42 gallons. The plaintiff testified that the common size of the barrel into which it is usual to put petroleum oil in Philadelphia, and in which, when sold in barrels, it is usually sold, was 42 gallons. The defendants offered no evidence to the contrary, but objected to any evidence as to the size or measurement of the barrel ; but the presiding judge ad mitted the same.

" The defendants offered and proved the laws of Pennsylvania, and also those of New York, so far as they might affect this case,) fixing the denominations of liquid measure, and fixing the barrel at 31½ gallons, to which laws reference may be had.

and requested the presiding judge to instruct the jury that, in estimating damages, the barrel should be taken as containing $31\frac{1}{2}$ gallons and no more. But it having been shown by the evidence that the plaintiff offered to deliver to the defendants 1000 barrels of oil, of 42 gallons each, which were shown to the defendants' agent, and samples taken by him; and that in all the discussions concerning the delivery between the parties, no suggestion was ever made that 1000 such barrels were not what the contract required; and one defendant having testified that he intended, when they were offered, and was ready to receive those barrels, if the oil was of the requisite fire test, the court instructed the jury, that if they found from the evidence that 42 gallons was the usual capacity of barrels of oil, and that the parties understood and intended to contract for such barrels of oil as a specific article of merchandise, and not to use the word ' barrel' in their contract as the statute measure of quantity, then they might estimate the amount of oil agreed to be sold at 42,000 gallons, in assessing the damages.

" The jury returned a verdict for the plaintiff, and assessed the damages at $4,788.53; and the question is reserved for the whole court, upon the agreement of the parties that, if this instruction was erroneous, the damages assessed by the jury shall be diminished in the proportion of $31\frac{1}{2}$ to 42, and the verdict be amended accordingly."

*R. Codman,* for the defendants. 1. Extrinsic evidence was not admissible to explain the meaning of the word " barrel," for the ambiguity, if any, is patent; but there is no ambiguity, for where a word has a legal meaning and a popular meaning, the legal meaning shall prevail. 1 Greenl. Ev. § 280. And further, here the contract excludes the signification of " vessel," for the price is fixed upon the gallon, which can relate only to quantity. 2. If parol evidence is ever admissible to affect a writing, it must be either : (1) to define the terms, by giving a special or conventional meaning to its words, but the evidence was not so offered in this case; or (2) to identify, or explain, or annex incidents to the subject matter, but here there was no particular subject matter of sale *in esse;* the contract was executory, and

for a general description of merchandise ; or (3) as a usage of trade with reference to which the contract is assumed to be made, but in this case the evidence offered was too indefinite and uncertain to amount to a usage, and moreover is contradictory to the writing. 1 Greenl. Ev. §§ 292–295. 2 Greenl. Ev. § 251. *Wadsworth* v. *Alcott*, 2 Selden, 64. *Dawson* v. *Kittle*, 4 Hill, 107. *Wheeler* v. *Newbould*, 5 Duer, 29. *Smith* v. *Jeffryes*, 15 M. & W. 561. *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416. *Barry* v. *Bennett*, 7 Met. 354. 3. " Where words have a known legal meaning, such, for example, as measures of quantity fixed by statute, parol evidence that the parties intended to use them in a sense different from their legal meaning, though it were still the customary and proper sense, is not admissible." 1 Greenl. Ev. § 280. 2 Taylor Ev. § 1064. *Evans* v. *Myers*, 25 Penn. State, 114. *Smith* v. *Wilson*, 3 B. & Ad. 728. *Hockin* v. *Cooke*, 4 T. R. 314. *Many* v. *Beekman Iron Co.* 9 Paige, 188. *Sleight* v. *Rhinelander*, 1 Johns. 192. *Noble* v. *Durell*, 3 T. R. 271. The Pennsylvania St. of April 15, 1834, enacts that " the denominations of liquid measure of this commonwealth, whereof the gallon as heretofore provided is the standard unit, shall be . . . thirty-one and a half gallons make one barrel." The question, if any, raised by the parol evidence was simply one of quantity. 4. The act of taking samples on December 31, and omitting to protest against the quantity, by the defendants, was not material. No presumption whatever arises from it as to the intention of the parties at the date of the contract, nor can the subsequent acts of the defendants be claimed as a waiver, for it was not so put to the jury. So the statement by one of the defendants at the trial as to his purpose, at the time of delivery, was no evidence of his intention at the time of the contract. If this statement of the defendant be claimed as an admission, it must be taken altogether, and he expressly confined it to his purpose at the time of delivery. 1 Greenl. Ev. § 201. *Whitewell* v. *Wyer*, 11 Mass. 6.

*A. A. Ranney*, for the plaintiff.

GRAY, J. The written contract between the parties does not show whether the word " barrels " is used as describing a quan-

tity merely, or a vessel of a certain kind and capacity; for " bar · rels " might mean either a quantity or a vessel; and if the vessels intended were of a uniform size, the fixing of the price by the gallon would be equally adapted to either. Parol evidence was therefore admissible to show in which sense the parties intended to use the word; and the presiding judge rightly admitted testimony that refined petroleum was often sold in barrels, and that the usual size of such barrels was forty-two gallons. No evidence was offered that it was ever sold in any other way. The statute of Pennsylvania, prescribing the number of gallons to a barrel, as a denomination of liquid measure, does not apply to sales by kegs, casks or vessels of a particular kind. The evidence that the barrels exhibited by the plaintiff, and from which the defendants' agent took samples, at the time of the plaintiff's offer to deliver, were of the capacity of forty-two gallons; that in all the discussions between the parties concerning the delivery, no suggestion was made that such barrels were not what the contract required; and that the defendants at that time intended and were ready to receive those barrels if the oil was of the requisite fire test; was competent to show that the parties, at the time of making the contract, understood and intended to contract for such barrels of oil as a specific article of merchandise, and not to use the word " barrel " as the statute measure of quantity; and the question of the intention of the parties in that respect was rightly submitted to the jury. *Noble . Durell,* 3 T. R. 273, 275. *Smith* v. *Wilson,* 3 B. & Ad. 728. *Clayton* v. *Greyson,* 6 Nev. & Man. 694; *S. C.* 5 Ad. & El. 302. *Spicer* v. *Cooper,* 1 Gale & Dav. 52; *S. C.* 1 Q. B. 424. *Cullum* v. *Wagstaff,* 48 Penn. State, 300. *Bradford* v. *Manly,* 13 Mass. 139. *Putnam* v. *Bond, ante,* 58. *Stoops* v. *Smith, ante* **63.** *Judgment on the verdict for the plaintiff.*