John Wood v. M. F. Allen, Appellant.

**Evidence:** USAGE OF TRADE LOCALLY. It is error to exclude evidence that the term "dry goods" used in a written contract, bears a meaning, according to the usage of the locality and among business men and merchants in the community in which the stock was located, under which notions, clothing, hats and caps are excluded, since such evidence does not contradict the terms of the contract, but merely applies them to its subject-matter.

CURING ERROR BY CHARGE. A charge that "dry goods" meant in a commercial sense, textile fabrics, cottons, woolens, linens, silks, laces, etc., that textile fabrics are those woven, as carpets, or capable of being formed by weaving, and that a "textile" fabric is one made by weaving, does not cure the error of excluding evidence that "dry goods" excluded caps, clothing and the like. The jury could not say with certainty whether, under the charge, clothing and caps made of woolen goods should or should not be included in "dry goods."

BY WITHDRAWAL OF ISSUE. The withdrawal of an issue of fraud and false representations inducing a sale, from the jury, cures any errors occurring in the prior admission of evidence adduced to sustain such issue and, in the absence of request, the court need do no more than to withdraw the issue.

**Understanding of Parties to Contract:** It is proper to instruct that, if the parties intend the terms of a written contract to be taken in a sense different from their ordinary one, that sense is to prevail against either party, in which he had reason to suppose the other understood its terms.

CONSTRUCTION: *When court interprets.* A written contract provided for the sale of a stock of merchandise, except dry goods and men's overcoats. An invoice was made by certain selected persons. *Held* that, in the absence of a provision making the decision of the invoicers as to what articles the term "dry goods" included final, the court was authorized to determine what articles were included in that term.

*Appeal from Appanoose District Court.*—HON. T. M. FEE, Judge.

FRIDAY, APRIL 13, 1900.

ACTION at law, in which plaintiff seeks to recover the sum paid by him to defendant, on a contract which, it is claimed, plaintiff rescinded because of the fraud of defendant. Issue was tendered, and the case tried to a jury, resulting in a verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Mabry & Payne* and *C. R. Porter* for appellant.

*C. F. Howell* for appellee.

DEEMER, J.—Plaintiff and defendant entered into a contract whereby the defendant agreed to sell to plaintiff his entire stock of merchandise in the town of Jerome, excepting only the dry goods and men's overcoats. After the contract was executed, an invoice was taken of the goods, which amounted to something over two thousand dollars. As the invoice amounted to more than plaintiff anticipated, a controversy arose between the parties with reference to some of the goods included in the invoice; plaintiff insisting that they were dry goods, while defendant contended that they were not. As neither would recede, plaintiff finally tendered performance by offering to take what he deemed were dry goods, amounting to six hundred and sixty-eight dollars. Defendant refused the offer, and plaintiff then gave notice of rescission, and commenced action to recover the three hundred dollars he had paid on the purchase price. The case turns largely on the proper construction of these words, found in the contract between the parties, "excepting from said stock of merchandise only that part consisting of dry goods and men's overcoats." Plaintiff claims that, before entering into the contract with the defendant, defendant pointed out to plaintiff the goods that were to be sold; that, with the exception of boots and shoes, they were all on the

east side of defendant's store where the grocery stock was kept; and that defendant stated there would be no trouble in having an understanding about what were included in the term "dry goods," as everything on the west side was dry goods, except boots and shoes; "in fact, everything that had a thread in it." In another building defendant had some goods stored, consisting, among other things, of ladies straw hats and other articles, that were invoiced by the persons who were selected for that purpose as a part of the stock that plaintiff had purchased. When the invoice was taken, many items were included that were found in the western part of the store, and a great many articles that were in the other storeroom, that plaintiff claims were not included in his contract. The dispute then arose which finally led to this litigation. By the terms of the contract, which was in writing, defendant sold to plaintiff his entire stock of general merchandise, now situated and located in the town of Jerome, with the exception heretofore stated. Defendant claims that he did not tell plaintiff what "dry goods" were, or what should be included in the contract. He says the contract was drawn by a third party at the request of both the signers; that plaintiff read it over, seemed to be content therewith, and signed it. At the trial defendant offered witnesses to prove what the term "dry goods" meant to merchants and business men in the community where the stock was located. He proposed to prove that "dry goods" meant shelf goods, bolt goods, dress goods, calicos, and flannels,—in other words, all piece goods,—and that notions, clothing, hats, and caps were not included in that term, according to the ordinary usages of the community. Objections to these questions were sustained, on the ground that answers thereto would tend to contradict and vary the terms of a written contract, and that it was for the court to determine from the language of the contract what was and what was not included in the terms used by the parties. These rulings were manifestly erroneous. In the construction of mercantile contracts,

parol evidence is admissible to show that terms used therein have acquired, by the custom of the locality or by the usage of trade, a peculiar significance; and this is true, although the terms used do not in themselves appear to be ambiguous. Such evidence does not contradict the terms of the contract, but simply applies them to the subject-matter. *Walls v. Bailey,* 49 N. Y. 464. Thus, evidence as to custom and usage has been admitted to explain the words: "Fur." *Astor v. Insurance Co.,* 7 Cow. 202; "roots," *Coit v. Insurance Co.,* 7 Johns. 385; "barrels," *Miller v. Stevens,* 100 Mass. 518; "C. O. D.," *Collender v. Dinsmore,* 55 N. Y. 200; "screened coal," *Manufacturing Co. v. McKee's Adm'r,* 77 Pa. St. 170: "1,000 shingles," *Soutier v. Kellerman,* 18 Mo. 509; "thousand feet," *Brown v. Brooks,* 25 Pa. St. 210; "fancy goods, and Yankee notion store," *Barnum v. Insurance Co.,* 97 N. Y. 188; "product," *Stewart v. Smith,* 28 Ill. 397; "outstanding accounts," *McClusky v. Klosterman,* 20 Or. 108 (25 Pac. Rep. 366, 10 L. R. A. 785); "furniture and fixtures," *Brody v. Chittenden,* 106 Iowa, 524; "top buggies with poles," *Manufacturing Co. v. Randall,* 62 Iowa, 245. The court instructed that the term "dry goods," in a commercial sense, meant textile fabrics, cottons, woolens, linens, silks, laces, etc.; that textile fabrics are those fabrics woven, as carpets, or capable of being woven or formed by weaving; and that the term or noun "textile" is a fabric which is woven or may be woven,—a fabric made by weaving. This, no doubt, is the definition given in the dictionaries, but, as we have seen, custom of the locality or the usages of trade may be shown to give them a different significance. Defendant was entitled to show this usage and custom, as a part of his defense. Plaintiff was permitted to give in evidence the conversation and acts of the parties at and about the time of the making of the contract, as well as subsequent thereto, to show what meaning the parties attached to the term "dry goods," and was also allowed to show the practical interpretation placed on the

contract by the parties themselves. But as defendant denied much, if not all, of this evidence, it was for the jury to. determine the truthfulness thereof.·  .

Defendant's right to have his theory of .the case presented was unduly abridged. But it is contended that the ruling was without prejudice, in view of the court's instruction. Under this instruction, it is difficult to say whether or not clothing and caps, that may have been made of woolen goods, were included in the term "dry goods." The custom or usage of the trade would have shed much light on this matter, and without such evidence the jury had no certain guide by which to determine the issues.

II. The petition also alleged fraud and false representations on the part of defendant inducing the sale. Evidence was admitted to establish this claim, but the court finally held that there was not sufficient to go to the jury, and in its instructions withdrew this issue from the case. Complaint is now made of the rulings on evidence adduced to sustain the claim. These complaints are without merit. Plaintiff was entitled to offer his evidence to sustain the issue, and, when the court finally took that issue from the jury, he was not, in the absence of request, required to do more.

III. The court instructed, in effect, that, if the terms of the agreement were intended in a different sense by the parties to it, that sense was to prevail against either party in which he had reason to suppose the other under stood it. The instruction was clearly correct. *Wood v. Duval,* 100 Iowa, 724; *Chicago Lumber Co. v. Tibble's Mfg. Co.,* 80 Iowa, 369; *Ditson v. Ditson,* 85 Iowa, 276.

IV. Appellant further claims that the decision of the parties selected to make the invoice was controlling, and that the court had no authority to reinvestigate the matter. There is no provision in the contract making the decision of the invoicers final or controlling, and the

court was not deprived of its jurisdiction to determine the issue presented.

V. Some other matters are complained of, but as they are disposed of by what has already been said, or are not likely to arise on a re-trial, we do not consider them. For the error pointed out, the judgment is REVERSED.