J. B. STONER, Appellant, v. L. E. ZACHARAY AND HORACE COCHRAN, Appellees.

Negligence: EVIDENCE. In an action against a bank of damages caused by an alleged delay in forwarding the bill of lading of a shipment of produce, the evidence is considered and held to raise an issue of negligence which should have been submitted to the jury.

Bill of Lading: ENDORSEMENT. Where the evidence shows that upon payment of a draft accompanied by a bill of lading the title to a consignment of produce is to pass, such purchasers are entitled to demand and receive the shipment, though the bill of lading is not endorsed by the consignor.

Evidence: **DELIVERY OF GOODS.**    Evidence is admissible to show
3    that a direction in a bill of lading to "notify" certain par-
ties is recognized among carriers as authorizing a delivery of
the shipment to such parties upon presentation of the bill of
lading accompanied by the draft.

Negligence.    Where a bank is employed to make a sight draft for
4    the price of a shipment and forward it with a bill of lading
for collection, the consignor is not, as a matter of law, guilty
of negligence in relying on the bank to correctly draw the
draft and in signing it without reading.

*Appeal from Jasper District Court.*—HON. A. R. DEWEY,
Judge.

WEDNESDAY, JANUARY 20, 1904.

ACTION at law for the recovery of damages. Facts
stated in the opinion. Judgment for the defendants upon
a directed verdict, and plaintiff appeals.—*Reversed.*

*G. M. Tripp* for appellant.

*C. C. Nourse* for appellees.

WEAVER, J.—The plaintiff alleges that on October 15,
1899, at Prairie City, Iowa, he sold a car load of onions to
W. H. Judy & Co. for the agreed price of $350, and, in
pursuance of such sale, made the shipment by railroad to
his own order at Bloomington, Ill., receiving from the
railroad company a bill of lading accordingly; that upon
the same day he took said bill of lading to the defendants,
who were doing a banking business in Prairie City, and
requested them, by their cashier, to make a draft on W.
H. Judy & Co. for $350, and forward the same at once
with the bill of lading for collection from said W. H. Judy
& Co., at Bloomington. He alleges that in pursuance of
such request the cashier, having prepared a draft which
was signed by plaintiff, received the same with the bill of
lading, and undertook to make the collection as directed.

He further alleges that defendants and their said cashier failed and neglected to forward said draft and bill of lading as agreed, and that by reason thereof W. H. Judy & Co. could not and did not obtain possession of the shipment, thereby causing a delay in the delivery, during which the onions were spoiled and rendered valueless. The defendants deny the allegations of the petition, and allege that the delay, if any, in the presentation of the draft and bill of lading, was the fault of plaintiff. At the close of the evidence offered by both plaintiff and defendants, the court sustained a motion to direct a verdict in favor of the latter.

Without going into an extended recital of the evidence, it may be said that the testimony of the plaintiff and his witnesses tends to show that he directed the defendants to send the draft and bill of lading for collection to Bloomington, and to notify W. H. Judy & Co. thereof at Peoria, Ill.; that the onions were in fact consigned to said plaintiff at Bloomington, where they arrived on October 7, 1899 ; that soon after their arrival at said destination they were examined by a member of the firm W. H. Judy & Co., and found to be in good condition and reasonably worth the purchase price; that, on applying at the First National Bank at Bloomington, he found the draft drawn by plaintiff through defendants upon his firm, but said draft was not accompanied by the bill of lading, and without it said purchasers could not obtain a delivery of the shipment by the carrier; and that, after waiting a day or two, W. H. Judy & Co. telegraphed plaintiff to wire the railroad company to turn over the onions to them and make draft there. On receipt of this telegram, plaintiff's son, without authority, telegraphed to the agent of the railroad company at Bloomington to turn the onions over to the purchasers on payment by them of $350, to which direction the agent telegraphed a reply that he was

not allowed to make collection on goods shipped over their railroad, and could "only deliver on presentation of bill of lading." Meanwhile the draft was returned. It appears that, as originally drawn, the draft was addressed to W. H. Judy & Co., at Peoria, Ill., instead of Bloomington, and, on its return to defendants, their cashier, having learned of the confusion which had arisen, erased the name "Peoria," and inserted the name "Bloomington," and forwarded it again on or about October 11, 1899, and not being paid, it was finally returned some days later. It is further shown without dispute that, while thus kept in the railway car after their arrival in Bloomington, the onions sprouted and became worthless. As bearing upon the question where the draft was ordered sent for collection, plaintiff swears that he told the defendants' cashier to send it to Bloomington, and relied upon him to draw it as directed, as he himself did not have his spectacles, and could not see to read the instrument. It is conceded that the cashier did draw the paper, and plaintiff signed it, after which the cashier took it for the purpose of sending it for collection. The cashier, on the other hand, states that the draft was directed precisely as the plaintiff ordered.

I. Assuming the truth of plaintiff's testimony, and giving it the most favorable interpretation of which it is fairly susceptible in his behalf, we think a verdict in his favor would have to be sustained; and, if this be true, it follows that the issue should have been submitted to the jury. It is true that the testimony upon part of the defendants tends to establish their claim that plaintiff did not direct the draft and bill of lading sent to Bloomington, but to Peoria; that said direction was obeyed; and that the mistake leading to the delay was on part of plaintiff, in directing the course of the draft; but all this, at most, served only to raise an issue of fact, to be settled by the verdict of the jury. It

1. NEGLIGENCE: evidence.

is not urged that if plaintiff had proved the alleged negligence on part of defendants, and consequent loss or injury to himself, he was not entitled to damages, and we are quite clear there was evidence from which such a finding might be sustained.

II.   It is said on part of appellees that the evidence does not show the bill of lading to have been indorsed by the plaintiff, and that, without such indorsement, W. H.

2. BILL of lading: endorsement.     Judy & Co. could not have obtained possession of this shipment.   From this premise it is argued that plaintiff has failed to show any injury by reason of the delay in presenting the draft and bill of lading.   We think this position is not sound.   The entire transaction manifests the intention of the parties that upon payment of the draft, accompanied by the bill of lading, the title in the onions should pass to W. H. Judy· & Co., and upon such payment being made, and the draft and bill delivered to said purchasers, their title and right to demand and receive the shipment would be complete, even in the absence of plaintiff's formal indorsement. *Rochester Bank v. Jones*, 4 N. Y. 497 (55 Am. Dec. 290); *Emery v. Bank*, 25 Ohio St. 360 (18 Am. Rep. 299); *Davenport Bank v. Homeyer*, 45 Mo. 145 (100 Am. Dec. 363). This rule is especially applicable in the present case. The bill of lading was made to "Consignee J. B. Stoner Nfy. (Notify) W. H. Judy & Co."; thus, from its form, apprising the carrier that Judy & Co. had some interest in the shipment; and, as we have above suggested, on the appearance of these parties, with the bill and draft in their possession, affording evidence of their right, we may safely conclude that a delivery to them would not have been refused.

Moreover, plaintiff offered testimony to prove that the legend "Nfy." on the bill of lading, in the manner here employed, is understood and recognized among carriers, and by the carrier having possession of this shipment,

as indicating that the party thus to be notified is entitled

3. EVIDENCE: delivery of goods. to receive the property on presentation of the bill of lading, accompanied by the draft to which it is attached. This evidence was ruled out, and in this we think there was error. The abbreviation is not in itself of such plain or unequivocal signification as to exclude explanation by persons versed in the business in which it is used. And if this abbreviation, or the full word "notify," has acquired a peculiar meaning among carriers, plaintiff was entitled to prove the meaning of the same. *L. Cook Mfg. Co. v. Randall*, 62 Iowa, 244; *Coulter Mfg. Co. v. Ft. Dodge Co.*, 97 Iowa, 616; *Wood v. Allen*, 111 Iowa, 97.

III. The final proposition in the motion for directed verdict which is urged in argument before us is that the evidence conclusively shows the plaintiff to have contrib-

4. NEGLIGENCE. uted by his negligence to the injury of which he complains. This is based upon the proposition that as plaintiff says he signed the draft without reading it, and cannot state whether the name "Peoria" then appeared in it, he was therefore confessedly negligent. The rule upon which appellees rely is not broad enough to cover this case. In the first place, plaintiff swears, that by reason of the want of spectacles he could not read the instrument, but, assuming that it was written by the cashier as directed, he signed it. We cannot say, as a matter of law, this constitutes negligence. In this transaction with the bank and its cashier, he was not dealing with one who was hostile in interest. He applied to a bank presumably experienced in making collections of this kind; and, having given the data required, and being himself unable to read, it is not for the court to say that he was negligent in relying upon the accuracy and skill of the cashier in a matter so peculiarly within the line of his business, or in signing the draft under such circumstances without procuring someone to read it for him. The cases cited by the appellees, of which *McKin-*

*ney v. Herrick*, 66 Iowa, 416, and *McCormack v. Molburg*, 43 Iowa, 561, are types, are not applicable here. In each of those cases a party who had knowingly signed a contract without reading it or having it read to him, and without any fraudulent device practiced upon him to prevent his obtaining knowledge of its contents, was held not entitled to show that he did not know the stipulations of the agreement to which he had put his name. In the present case plaintiff was taking upon himself no contractual obligation, save the implied obligation to pay the defendants for their services in making the collection. He had orally employed them to make this collection, and trusted them to prepare the instrument by which it was to be made; and it would be going very far, indeed, to say that, as a matter of law, he was negligent in not fencing against a possible mistake on their part in preparing the draft for his signature. They were his agents, employed to perform a service in which they, as bankers, were presumably skilled, and he, as a farmer, was presumably less familiar; and, to say the very least, if, under such circumstances, he did not exact a reading of the draft before signing it, his negligence is not so glaring or patent as to justify the court in withdrawing the case from the jury.

It follows from the foregoing observations that the motion directing a verdict for the defendants was improperly sustained, and a new trial will be ordered.— REVERSED.