[Civil No. 2675. Filed April 9, 1928.]

[266 Pac. 3.]

RIO GRANDE OIL COMPANY, Appellant, v. UPTON OIL COMPANY, Appellee.

Messrs. Anderson & Gale and Mr. Leo T. Stack, for Appellant.

Messrs. Norris, Norris & Flynn, for Appellee.

LOCKWOOD, J.—On July 17th, 1926, Upton Oil Company, a corporation, hereinafter called plaintiff, entered into a written contract with Rio Grande Oil Company, a corporation, hereinafter called defendant, whereby the latter agreed to purchase from plaintiff certain of its assets within the state of Arizona for the sum of $87,500, and in addition thereto to purchase at cost all plaintiff's merchandise on hand. The contract describing the property, so far as it is necessary to be stated for the purposes of this opinion, reads as follows:

"The property we offer and agree to purchase for this consideration is as follows:

"Located at Prescott, Arizona— . . . One (1) warehouse, together with all barrels, buckets, funnels, and miscellaneous office equipment. . . .

"Located at Ash Fork, Arizona— . . . One (1) warehouse and garage, and all barrels, buckets, funnels, and miscellaneous office equipment. . . .

"Located at Wickenburg, Arizona— . . . One (1) pump-house, together with all barrels, buckets, funnels, etc. . . .

"In addition to the above, we hereby offer and agree to purchase all merchandise at cost. . . . "

After the contract had been executed, defendant sent its traveling auditor, one W. J. Welch, to Arizona for the purpose of taking an inventory of the property covered by the contract. In the inventory, made jointly by Welch and plaintiff's agent, and listed as merchandise, were included a large number of metal

containers used for the shipping of motor oil. This inventory was completed about the 1st of August, and plaintiff immediately turned over to defendant the property sold, full possession being taken by the latter, while the inventories were sent to the California office of defendant for checking.

About the 22d of August, G. B. Upton, plaintiff's president, went to Los Angeles for a final settlement. There is a conflict in the evidence as to just what occurred there, but at all events there was a dispute as to whether the metal containers listed on the merchandise inventory should be included in the purchase price of $87,500 as being "barrels," or whether they were to be paid for as "merchandise." Upton returned to Arizona and within a very short time plaintiff brought suit against defendant on the contract of July 17th, claiming, among other things, that the metal containers were merchandise and were to be paid for as such. Defendant answered, but before trial a stipulation was entered into which in effect disposed of all the issues in the case except that of the metal containers above referred to. The language of the stipulation on that point reads as follows:

"It is mutually stipulated that there is an item of $2,388.93, which is the only sum in dispute, and which dispute arises over the classification of certain barrels commonly known as 'one time shippers,' and two storage tanks at Clarkdale, Arizona. . .

"It is understood that there is no other item of disagreement which can or may arise out of said contract,"

—the contract referred to being that of July 17th, 1926.

The matter was tried before a jury, which returned a verdict in favor of plaintiff for the sum of $2,248.43, this being the agreed value of the metal containers if they were to be classified as merchandise. After

the judgment and after the usual motion for new trial was made and denied, defendant appealed to this court.

There are some nine assignments of error which we will consider as seems advisable. The only controversy on the merits of the case is as to whether or not, as a matter of law and fact, the metal containers come under the head of "barrels" as set forth in the portion of the contract quoted above, or under the head of "merchandise" in the same contract. It is defendant's contention that the contract on its face is plain and unambiguous; that in such cases it is the duty of the court to construe it as a matter of law; and that extrinsic matters and parol evidence cannot be considered as an aid in the construction. That this is the general rule, of course, cannot be doubted. *Merchants & Stock Growers' Bank* v. *Marley, ante,* p. 294, 264 Pac. 471; *Jones* v. *Morrison,* 24 Ariz. 367, 210 Pac. 472; *Valentine* v. *Shepherd,* 19 Ariz. 241, 168 Pac. 643; *Carrick et al.* v. *Sturtevant,* 28 Ariz. 5, 234 Pac. 1080.

It is claimed by plaintiff, however, that in the construction of mercantile contracts parol evidence is admissible to show that the terms used therein have acquired by the custom of the locality or by the usage of the trade peculiar significance, and that this is true, although the terms used may not of themselves appear to be ambiguous. We think this is a correct statement of the law. *Wood* v. *Allen,* 111 Iowa 97, 82 N. W. 451; *Miller* v. *Stevens,* 100 Mass. 518, 1 Am. Rep. 139, 97 Am. Dec. 123; Elliott on Contracts, § 1565.

In the case at bar the evidence is conflicting as to whether or not the word "barrel" as used in the oil business in Arizona included metal containers of the kind in controversy here. We think in such circumstances that the court should submit the question to the jury under the proper instructions, even though

the contract on its face is otherwise plain and unambiguous. The first assignment, that the court refused to instruct the jury to return a verdict in favor of defendant, is not good.

The second assignment of error is that plaintiff was permitted to introduce in evidence unsigned and unauthenticated copies of bills of sale for the merchandise and equipment shown by the inventories and contract. The copies so admitted were carbon copies of the originals. If they had been offered for the purpose of showing a transfer of title or conveyance of property, the objection might have been well taken. It is contended by plaintiff, however, that they were presented as tending to show that defendant had placed a practical construction upon the meaning of the phrase "barrels." We are of the opinion that such documents, having been prepared by defendant and being carbon copies of originals, were admissible for this purpose.

The third assignment of error was that the court erred in striking the testimony of the witness Welch to the effect that he had no authority to include the metal containers in the merchandise inventory. The answer of the witness was not in response to a question but was a voluntary statement on his part, was objected to on that ground, and was stricken. The court was correct in its ruling.

The fourth assignment of error is that the court should not have permitted the witness Upton to testify that defendant's witness Welch, who assisted in the making of the inventories, stated he was its auditor. Since it appears from the testimony of Welch and Lockhart that he was in fact such auditor, we cannot see where it was prejudicial, even if technically erroneous.

The fifth assignment of error, to the effect that the court erred in admitting parol evidence in explana-

tion of the written contract, is covered by our ruling on the first.

The sixth assignment of error is that the court erred in giving the following instruction:

"You are further instructed that if you find from the evidence in this case that an inventory of the property purchased by the defendant was made by representatives of the Upton Oil Company and the defendant Rio Grande Oil Company, and that in such inventory the articles here in dispute were classified as merchandise, and that contemporaneously therewith the defendant company took over the business and property of the Upton Oil Company, without any dispute arising between the parties as to the classification of the articles now in dispute, under the contract of purchase then existing between the parties, those acts on the part of the parties would be an interpretation of the contract, and you are entitled to take that interpretation into consideration in arriving at your verdict."

There are some eight objections made to this instruction. On examining it, we think it is a correct statement of the law applicable to the evidence in the case, and that it does not constitute a comment on the evidence. This disposes of all of the eight objections except the one that the stipulation above quoted was, as a matter of law, an agreement that the containers were "barrels" under the terms of the contract. It is urged that since the stipulation refers to the containers as "barrels" it is an agreement between the parties that they must be so classified under the contract. If this be true, there is no lawsuit, and we think it would be a very forced construction to hold that where the stipulation expressly recognizes that there is a dispute as to the classification it should be construed as an agreement that there is *no* dispute. It is possible that the language used might have been chosen more carefully, but we think it would be unjust, indeed, to hold that plaintiff had

stipulated itself out of court by the use of the word above quoted.

The seventh assignment of error is based on the theory that the question of any interpretation given the contract between the parties themselves was not in the case. When there is doubt as to the meaning of any part of a contract, the practical interpretation placed thereon by the parties is always admissible. *Powers* v. *World's Fair Mining Co.,* 10 Ariz. 5, 86 Pac. 15; *Wood* v. *Allen, supra.*

The eighth assignment is the failure of the court to give certain instructions defining the terms "barrel" and "merchandise." Since the issue before the jury was as to the particular technical meaning given to the words in the oil business and in the contract of sale, and not as to the common or ordinary meaning, the definitions given in the instructions submitted by defendant were in effect a peremptory instruction to return a verdict for it. The instructions were properly refused.

The ninth assignment is that the evidence does not sustain the verdict. On this point the issue of fact was as to the trade meaning of the terms "barrel" and "merchandise" as used in the contract. There was evidence both ways as to whether or not the metal containers came within the meaning of the one or the other of these words. The rule that we will not disturb the verdict of a jury on conflicting evidence is too well established in this jurisdiction for us to do more than state it.

It appearing from the record that no error prejudicial to defendant occurred at the trial, the judgment of the superior court of Yavapai county is affirmed.

ROSS, C. J., and McALISTER, J., concur.