433 P.2d 629

**TUCSON UTILITY SUPPLIES, INC., an Arizona corporation, Appellant,**

v.

**Frederick J. GALLAGHER and Marion Gallagher, husband and wife, dba Fred J. Gallagher Construction Co., and Fidelity & Casualty Company of New York, a corporation, Appellees.**

**No. 7750.**

Supreme Court of Arizona.

In Banc.

Nov. 16, 1967.

Scruggs & Rucker, by Edgar F. Rucker and D. Thompson Slutes, Tucson, for appellant.

Johnson, Darrow, D'Antonio, Hayes & Morales, by Lawrence P. D'Antonio and Burt L. Haberman, Tucson, for appellee.

UDALL, Justice:

Plaintiff, Tucson Utility Supplies Inc., commenced this action in the Pima County Superior Court against defendants, Frederick J. Gallagher and Marion Gallagher, and their bonding company, Fidelity and Casu-

alty Company of New York, for money due and owing on a contract. Defendants plead, as an affirmative defense, breach of contract and counterclaimed for breach of warranty. A trial by jury was had, and based upon the verdict, plaintiff was granted judgment against all defendants for $5,733.-77, and defendants Gallagher were granted judgment against plaintiff for $7,500. From the judgment granted Gallagher, plaintiff appeals.

In the spring of 1960, Gallagher, hereinafter referred to as defendant, entered into a contract with the City of Tucson to put water pipe into the ground in certain areas of the city. The contract provided that the pipe should meet certain specifications, and in August 1960, Tucson Utilities Supplies, Inc., hereinafter referred to as plaintiff, began furnishing to defendant pipe which supposedly met those specifications. Payments were made on account, and when the job was completed, there was a balance due plaintiff in the amount of $5,733.77.

While the pipe laying was being done, certain of the pipe leaked or blew up. Of the approximately fourteen thousand feet of pipe plaintiff supplied defendant for the job, over one thousand feet was damaged, and upon defendant's request picked up by plaintiff. There was no evidence adduced at trial rebutting defendant's testimony that no credit was allowed him for the damaged sections of pipe. The testimony is conflicting as to the number of pipe failures defendant experienced during the course of the contract. During the period in which work was being performed pursuant to the contract, defendant continually reported to plaintiff that the pipe was bursting before it met the requisite pressure requirements. As a result, plaintiff submitted to the factory an application for credit for seventeen pipe failures at $150 each. The request was approved and the credit was passed on to the account of defendant. During the course of trial, testimony was adduced that in addition to the extra pipe needed, defendant incurred additional expenses for labor, equipment,

overhead, lost profit, insurance and for delay as a result of the faulty pipe.

At the close of the case, the jury returned a verdict in favor of the plaintiff for the full amount of its complaint, and a verdict in favor of defendant on its counterclaim. Motions were made by defendants to set-off the judgment of the plaintiff against the judgment of the defendant, and by plaintiff for a new trial. Notice of appeal was subsequently filed by plaintiff, appealing both from the judgment in favor of defendant and from the order denying its motion for a new trial.

Plaintiff initially contends that the trial court erred in failing to grant its motion for new trial on the ground that the verdict in defendant's favor was not sustained by the evidence. It was argued that no evidence was introduced which would justify the jury returning a verdict on the counterclaim in the sum of $7,500, rather it should have returned a verdict in defendant's favor either in excess of $20,000 or in the sum of $9,450 (63 failures x $150).

Included in the charge to the jury were instructions to the effect that all losses directly and naturally resulting to defendant in the ordinary course of events from the breach of warranty or such damages as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract constitute proper elements of damage. See § 44–269, subsec. F, A.R.S. No assignment of error is made with respect to these instructions. Defendant at trial claimed, and put in proof tending to establish such, damages consisting of the following itemized expenses: labor, $4,111.53; equipment, $3,700.35; overhead, $4,371.34; lost profit, $8,769.22; insurance, $403.95; and delay, $5,337.46. In addition evidence was introduced that the parties had worked out a settlement whereby defendant was given credit for seventeen pipe failures at a rate of $150 per failure. Defendant testified that for those seventeen failures $150 was a reasonable settlement figure per pipe failure. He

denied, however, that it would be a reasonable figure for all other failures. On the question of how many pipe failures occurred as a result of the faulty pipe, defendant testified that there were eighty. The testimony of the field engineer employed by the city and that of others testifying was that a lesser number of failures occurred.

We must sustain the verdict and judgment of the lower court if there is substantial evidence from which reasonable men could have found for defendant in the amount in question. Meyer v. Ricklick, 99 Ariz. 355, 409 P.2d 280 (1965); Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965); Spain v. Griffith, 42 Ariz. 304, 25 P.2d 551 (1933). Though the combined total of damages claimed by defendant exceeded the amount awarded, the jury could very well have limited their verdict by doing either of the following: (1) accepted certain items of damages and rejected others, or (2) found that a certain number of pipe failures actually occurred and for each failure allowed so much in damages. We cannot say that there is no possible combination of testimony upon which the verdict could have been based, nor is there anything of sufficient moment in the record suggesting that the verdict was the result of some extrinsic consideration such as bias, passion, prejudice or misconduct on the part of the jury.

Plaintiff's remaining assignments of error involve the giving or the refusal by the trial judge of certain requested instructions. Error is assigned because the trial court read section 44–249, 14 A.R.S.[1] rather than plaintiff's Requested Instruction No. 4 charging the jury that a buyer claiming a breach of warranty must give the seller notice within a reasonable time. We have held that the giving of notice of a breach of warranty within a reasonable time after the buyer knows or should have known of the breach is a prerequisite to the right of recovery, Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744 (1963), but we fail to see in the instant case how the jury was improperly charged on this point. The charge as it was actually given substantially covered the refused instruction. See Johnson v. Orcutt, 92 Ariz. 295, 376 P.2d 557 (1962).

Plaintiff next complains that the court erred in refusing to instruct the jury that where a buyer with knowledge of the breach of warranty permits the removal of defective goods and the replacement of new goods without expense to him, and does not reserve a claim for damages resulting from the breach, the contract is rescinded and the buyer cannot hold the seller liable for damages resulting from the breach of warranty.

To warrant the giving of a requested instruction, there must be evidence to support it. It necessarily assumes that the jury can find facts to which the instruction is applicable. Elldredge v. Miller, 78 Ariz. 140, 277 P.2d 239 (1954). In the instant case the evidence is uncontradicted that plaintiff did not replace the one thousand feet of defective pipe, nor was credit given defendant for the damaged pipe. Since there was no evidence that the contract was rescinded, there was no duty upon the trial court to give the instruction.

Complaint is next made that the trial court erred in refusing to read the full text of plaintiff's Requested Instruction No. 19.[2] 12 Am.Jur. Contracts § 249

---

1. "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

2. "It will be your task as jurors to determine the meaning of the credit memorandum for $2,550.00 given to Fred J. Gallagher by Tucson Utility Supplies,

·is cited by plaintiff as authority for the refused portion. The text of section 249 deals with the construction to be given ambiguous contracts. It is true that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Green v. Huber, 66 Ariz. 116, 184 P.2d 662 (1947). Nevertheless, we hold that the refused portion was not a proper instruction under the facts of the case.

Although the jurors were instructed that it is their task to determine the meaning of the credit memorandum and what was intended by the parties, the portion refused proceeded on the assumption that the credit memorandum represented a contract of accord and satisfaction entered into by the parties. The evidence is anything but uncontradicted on this point and therefore the refused portion was improper as assuming the existence of a fact not established by uncontradicted evidence. See, also, Dover Copper Min. Co. v. Doenges, 40 Ariz. 349, 12 P.2d 288 (1932) and Rio Grande Oil Co. v. Upton Oil Co., 33 Ariz. 474, 266 P. 3 (1928).

■ Plaintiff's next assignment of error was that the court erred in giving defendant's Requested Instructions Nos. 3, 4, 6, 7 and 9 on the ground that they refer to implied warranties and the damages resulting therefrom whereas the evidence in the case concerned an express warranty. The assigned error is based on a letter sent to defendant by the plaintiff stating that the defendant would be protected on all jobs wherein the plaintiff had materials to supply. It was argued that this letter constituted an express warranty and therefore the complained of instructions on implied war-

ranties and damages recoverable thereon were improperly given by reason that an express warranty of quality excludes any implied warranty that the articles sold were merchantable or fit for their intended use.

Section 44–215 A.R.S. provides that an express warranty does not negative an implied warranty unless inconsistent therewith. In Nalbandian v. Byron Jackson Pumps, Inc., supra, we held that the implied warranties of merchantability and fitness may exist in addition to any express warranties not inconsistent. We said:

"Defendant in his argument stresses the fact that the plaintiff's theory is one of express oral warranty, as stated by his counsel at the trial. The implied warranty, however, is preserved * * * unless it is inconsistent with the express warranty. We find no inconsistency between a warranty of workmanship and materials, and a warranty that an article is fit for the purpose for which it was purchased. Under the Uniform Act it has been held that where there is an express warranty, the implied warranties are merged therein and survive unless expressly made inapplicable." 97 Ariz. at 285–286, 399 P.2d at 685.

We find no evidence of inconsistency in the instant case and therefore hold that it was not error to so instruct.

■ Finally plaintiff assigns as error the court's giving of defendant's Requested Instruction No. 10 which dealt with damages resulting from breach of contract. Though neither count of defendant's counterclaim dealt with damages resulting from breach of contract, defendant alleged as an affirmative defense in his Amended Answer

---

Inc., and what was intended by the parties. [The following is the portion of the instruction which was refused]:

"It is to be assumed that the parties to a contract know best what is meant by its terms and are the least likely to be mistaken as to its intention, that each party is alert to protest his own interests and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its

terms as they understood and intended it should be. Parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and practical interpretation reflects that meaning than when subsequent differences have impelled them to resort to law, and one of them then seeks an interpretation at variance with their practical interpretation of its provisions."

and Counterclaim that damages resulted from plaintiff's breach of the contract. Furthermore, defendant's trial memorandum included the issue of damages resulting from breach of contract. For these reasons, we fail to see how this instruction was improper as being outside the issues raised by the pleadings and the facts developed by the evidence.

Judgment affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.